**Eugene JOHNSON, et al., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**John E. BRYSON, Secretary, United States Department of Commerce, Defendant.**

No. 10 Civ. 3105(FM).

United States District Court, S.D. New York.

March 22, 2012.

Adam T. Klein, Justin Mitchell Swartz, Lewis M. Steel, Melissa E. Pierre-Louis, Ossai Miazad, Samuel Rand Miller, Rachel Megan Bien, Outten & Golden, LLP, Darius Charney, Lansner & Kubitschek, Jackson Chin, Puerto Rican Legal Defense and Education Fund, Inc., Judith Melissa Whiting, Paul Francis Keefe, Community Service Society, Richard F. Bellman, Anti-Discrimination Center of Metro New York, Inc., Anjana Samant, New York, NY, Robert T. Coulter, Indian Legal Resource Center, Helena, MT, Michael T. Kirkpatrick, Public Citizen Litigation Group, Jane Dolkart, Ray P. McClain, Sarah Crawford, Audrey Jordan Wiggins, Lawyers' Committee for Civil Rights Under Law, Washington, DC, Sharon Dietrich, Community Legal Services, Inc., Philadelphia, PA, for Plaintiffs.

Allison D. Penn, Natalie Nancy Kuehler, Tara Marie La Morte, Daniel Post Filor, New York, NY, for Defendant.

### DECISION AND ORDER

FRANK MAAS, United States Magistrate Judge.

The plaintiffs in this putative class action ("Plaintiffs") allege that the process by which the United States Census Bureau ("Census Bureau") screens applicants for temporary jobs for the decennial census is racially discriminatory and therefore violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Specifically, the Plaintiffs challenge (1) the Census Bureau's policy requiring all applicants with criminal records to provide "official court documentation" of their prior arrests and convictions within 30

days after their receipt of a demand letter, and (2) the criteria the Census Bureau uses to determine whether an applicant who complies with such a demand is suitable for employment. The Plaintiffs contend that the Census Bureau's screening practices are neither job-related nor consistent with business necessity, and that they disproportionately preclude African-Americans, Latinos, and Native Americans from obtaining employment with the Census Bureau because these groups have higher arrest and conviction rates than Caucasians.

On September 10, 2010, the Census Bureau filed a motion to dismiss the Plaintiffs' first amended complaint. (*See* ECF No. 35 ("First Amended Complaint" or "FAC")). On March 14, 2011, I granted in part and denied in part that motion. *See Johnson v. Locke*, No. 10 Civ. 3105(FM), 2011 WL 1044151 (S.D.N.Y. Mar. 14,2011) ("*Johnson I*"). More specifically, the Census Bureau's motion to dismiss was granted without prejudice as to the individual claims of plaintiffs Felicia Rickett-Samuels ("Rickett-Samuels") and Sandra Anderson ("Anderson") and the Plaintiffs' class claims. The individual claims of the remaining Plaintiffs survived.

Presently before the Court are two subsequent motions: (1) the Census Bureau's motion to dismiss the Plaintiffs' claims for declaratory and injunctive relief (ECF No. 61); and (2) the Plaintiffs' motion for leave to file a second amended complaint ("Second Amended Complaint" or "SAC") (ECF No. 52). For the reasons set forth below, the Census Bureau's motion to dismiss is denied; the Plaintiffs' motion for leave to amend is granted in part and denied in part.

## I. *Background*

For a more thorough recitation of the facts, *see Johnson I* at \*1–6. Unless otherwise noted, the following facts are either undisputed or presented in the light most favorable to the Plaintiffs.

## A. *Census Bureau Hiring Process*

Pursuant to Article I, Section 2 of the United States Constitution, the Census Bureau conducts a population and housing census every ten years. In furtherance of the 2010 decennial census, the Census Bureau hired over one million temporary workers out of approximately 3.8 million applicants. (SAC ¶¶ 1–2). Almost every applicant was subjected to a criminal background check as a prerequisite for employment. (*Id.* ¶ 2). The background checks consisted of running the applicants' names and personal information through a Federal Bureau of Investigation ("FBI") database in an attempt to discover any arrest records associated with the applicants. (*Id.* 112). The Census Bureau then sent each applicant with a prior arrest record a form letter ("30–day Letter") requiring the applicant to submit "OFFICIAL COURT documentation on any and all arrest(s) and/or conviction(s) in [the applicant's] past" within 30 days to remain eligible for employment. (*Id.* ¶ 15 & Ex. A). Applicants who wished "to dispute the identity of the arrest record in question" were instructed, in the alternative, to submit a set of original fingerprints within 30 days. (*Id.*). Significantly, the Census Bureau sent 30–day Letters to applicants with arrest records even if they had not been convicted of a crime. The background checks also had no temporal limitations. Accordingly, applicants with decades-old arrests, including arrests when they were juveniles, received 30–day Letters. (*Id.* ¶ 12).

Approximately 93 percent of the 30–day Letter recipients-roughly 700,000 individuals failed to provide court documentation or fingerprints. (*Id.* ¶ 12). According to the Plaintiffs, applicants who received a

30–day Letter and who did provide the requested documentation were subjected to "an arbitrary and irrational screen [ (the 'Adjudication Criteria') ] whereby even those who had never been convicted, those who had their records officially expunged, and those with very minor and old offenses were excluded from" consideration for positions with the Census Bureau. (*Id.*).

The Plaintiffs contend that these Census Bureau policies have a racially discriminatory impact, in violation of Title VII, because the arrest and conviction rates of African–Americans, Latinos, and Native Americans far exceed those of Caucasians. (*Id.* ¶ 30).

### B. *Original Plaintiffs*

Plaintiffs Eugene Johnson ("Johnson"), Evelyn Houser ("Houser"), Anthony Gonzalez ("Gonzalez"), Ignacio Riesco ("Riesco"), and Precious Daniels ("Daniels") (collectively, the "Original Plaintiffs") have individual claims that survived the Census Bureau's first motion to dismiss.[1] *See Johnson I*, 2011 WL 1044151, at *14. Each of these Original Plaintiffs is either African–American or Latino, and each (1) applied for a temporary position for the 2010 census; (2) received a 30–day Letter because of a prior arrest or conviction; and (3) failed to secure employment with the Census Bureau. Johnson and Riesco timely submitted official court documentation, but were not hired because most temporary jobs had been filled by the time they were placed on the "eligible for hire" list. Houser was deemed ineligible for hire because she mistakenly submitted fingerprints instead of court documentation. Daniels was deemed ineligible because no court records relating to her arrest existed, making it impossible for her to comply with the instructions in the 30–day Letter. Gonzalez was deemed ineligible because he submitted a printout of his criminal record and a reference from his employer instead of the required official court documents. *See Johnson I*, 2011 WL 1044151, at *3–4.

In *Johnson I*. the Court determined that each Original Plaintiff stated a claim upon which relief could be granted. As the Court explained, Houser had exhausted her administrative remedies before commencing this action, and the remaining Original Plaintiffs could "piggyback" onto Houser's claims because of the "single filing rule." *See* 2011 WL 1044151, at *9–11. However, because none of the Original Plaintiffs complied with the heightened exhaustion requirements for bringing class claims under Title VII, their class claims

---

1. On January 4, 2012, Plaintiffs' counsel notified the Court of Johnson's death. (*See* ECF No. 94). The Plaintiffs further indicated that they intend to move to substitute the executor of Johnson's estate as Johnson's legal representative in this action within the ninety-day time period prescribed by Rule 25(a)(1) of the Federal Rules of Civil Procedure. (*Id.*). By letter dated January 18, 2012, the Census Bureau claimed that Johnson's death had an "immediate effect on plaintiffs' Motion to Amend, since [ ] Johnson's estate will not be able to pursue any injunctive claims on behalf of [ ] Johnson, even if any injunctive claims survive the [Census Bureau]'s pending Motion to Dismiss." (Letter from Ass't U.S. Att'y Daniel P. Filor to the Court, dated January 18, 2012, at 1). The Census Bureau further noted that Johnson's estate likely cannot serve as a class representative. (*Id.* (citing *First Interstate Bank of Nev. v. Chapman & Cutler*, 837 F.2d 775, 781 (7th Cir.1988), and *In re FleetBoston Fin. Corp. Secs. Litig.*, 253 F.R.D. 315, 325–26 (D.N.J.2008))). Assuming that both of the Census Bureau's assertions are correct, neither affects the outcome of the motions currently before the Court, because the remaining Original Plaintiffs are situated similarly to Johnson with respect to their claims for injunctive relief and the viability of their class claims. The outcome of the pending motions consequently would be the same even if Johnson were not a Plaintiff.

were dismissed. *See id.* at \*13 (citing 29 C.F.R. 1614.204(a)(2)).

### C. *Dismissed Plaintiffs*

In *Johnson I.* the Court also dismissed the claims of Rickett–Samuels and Anderson (together, the "Dismissed Plaintiffs") without prejudice. *Id.* at \*10, \*12. Rickett–Samuels' claim was dismissed because she had filed an Equal Employment Opportunity ("EEO") complaint but failed to exhaust her administrative remedies and thus could not piggyback on Houser's claim. Anderson, who is Native American, also was unable to piggyback on Houser's claim because Houser's EEO complaint failed to allege that the Census Bureau discriminated against Native Americans. Both Dismissed Plaintiffs now seek to reassert claims in the proposed Second Amended Complaint.[2]

### D. *New Plaintiffs*

The proposed Second Amended Complaint also seeks to assert claims on behalf of three new plaintiffs—Chynell Scott ("Scott"), Vivian Kargbo ("Kargbo"), and Scotty Desphy ("Desphy") (collectively, the "New Plaintiffs")—primarily in an effort to resurrect the Original Plaintiffs' dismissed class claims. *See Johnson I,* at \*14 n. 11 ("As a practical matter, this disposition will not preclude the Plaintiffs from pursuing their class claims since at least some of the administrative complaints containing class claims that the Census Bureau has held in abeyance pending the outcome of this lawsuit will presumably now be permitted to proceed."). Each of the New Plaintiffs timely filed an EEO complaint asserting class-wide claims pursuant to 29 C.F.R. § 1614.204. (*See* SAC ¶¶ 38–40).

Scott is an African–American resident of Philadelphia who applied for a temporary position with the Census Bureau in 2010. She received a 30–day Letter because she had been charged with four misdemeanors and two summary offenses in July 2008. Those charges arose out of an incident in which Scott allegedly left her two children unattended in her car for approximately ten minutes. The misdemeanor charges subsequently were dropped, and Scott pleaded guilty to the two summary offenses. (*Id.* ¶¶ 98–99). In response to the 30–day Letter, Scott sent the Census Bureau a "court summary" concerning her case. On February 3, 2010, the Census Bureau informed Scott that she would not be hired because of her criminal record. (*Id.* ¶ 100).

Kargbo is an African–American woman living in Dorchester, Massachusetts. Kargbo applied for a temporary job with the Census Bureau in March 2010. She received a 30–day Letter because of two charges against her that had been dis-

---

**2.** There is at least one other action pending in this District that challenges the Adjudication Criteria. *See Robinson v. Locke,* No. 11 Civ. 2480(PAC)(DF). The plaintiff in that action, originally proceeding *pro se,* accepted a temporary position as a Census Bureau enumerator, but was arrested between the time he accepted the job and when he reported for training. Although the charges later were dropped, the Census Bureau rescinded its offer. On February 1, 2012, Magistrate Judge Freeman recommended that Secretary Locke's motion to dismiss that action be denied, despite the plaintiff's conceded failure to allege racial discrimination in his original administrative charge. (*Id.* ECF No. 21). One of the bases of that recommendation was that the pendency of this action confirmed that "both the [Census] Bureau and the [Equal Employment Opportunity Commission ('EEOC')] could have been expected to consider and investigate the question of whether [the plaintiff] may have been adversely impacted by the [Census] Bureau's screening policy because of his race." (*Id.* at 17). After the Report and Recommendation was issued, counsel for the Plaintiffs in this action entered a notice of appearance on behalf of the plaintiff in *Robinson.* (*Id.* ECF Nos. 22–25).

missed and sealed under Massachusetts law. (*Id.* ¶¶ 102–05). Unable to ascertain which court documents the Census Bureau required, she sent her fingerprints instead. (*Id.* ¶ 106). The Census Bureau did not hire her and failed to return her repeated telephone calls requesting information regarding the status of her application. (*Id.* ¶ 107).

Desphy is an African–American woman residing in Philadelphia. In 1982, Desphy was arrested on an assault charge after she was involved in an altercation with another woman. Desphy contends that she acted in self-defense. The judge imposed a one-year term of probation, but told her that the record would be expunged if she successfully completed her probation, which she did. (*Id.* ¶¶ 109–11). Desphy applied for a temporary position with the Census Bureau in February 2010 and subsequently received a 30–day Letter. Desphy responded with a written explanation of her conviction, along with two letters of reference. Despite those submissions, on March 4, 2010, Desphy received a letter from the Census Bureau denying her application for employment. (*Id.* ¶ 110).

## II. *Discussion*

### A. *Defendant's Motion to Dismiss*

#### 1. *Standing and Mootness*

Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir.2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). It is therefore appropriate that the Court first address the Census Bureau's motion to dismiss the Plaintiffs' claims for injunctive and declaratory relief for lack of standing. The Census Bureau contends that the Plaintiffs lack standing because: (a) hiring for the 2010 decennial census is complete; (b) the

background check policy for the 2020 decennial census has yet to be developed; and (c) the Plaintiffs' alleged injuries are insufficiently imminent to justify equitable relief because hiring for the 2020 census will not begin for several years. (ECF No. 62 ("Def's Mem.") at 1–2). The Plaintiffs counter that their injuries are sufficiently imminent because the Census Bureau is unlikely to change its background check policy prior to the commencement of hiring for the 2020 census, for which they plan to seek temporary positions as soon as those positions become available. (*See* ECF No. 78 (Pl.'s Opp'n) at 1–2, 9). The Plaintiffs also cast the relevant question in terms of mootness, not standing, because, in their view, the Plaintiffs clearly had standing to seek equitable relief at the time they commenced this suit. (*Id.* at 1–2). For the reasons set forth below, the Plaintiffs have standing to seek injunctive and declaratory relief, and their claims are not moot. The Census Bureau's motion therefore must be denied.

#### a. *Applicable Law*

##### i. *Standing*

As the Supreme Court explained in *Lujan v. Defenders of Wildlife:*

the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative,

that the injury will be redressed by a favorable decision. 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations, internal quotation marks, ellipses, and brackets omitted). The burden is on the Plaintiffs to establish these elements of constitutional standing, which are to be "evaluated at the time the complaint is filed." *Access 4 All. Inc. v. Trump Int'l Hotel & Tower Condo.,* 458 F.Supp.2d 160, 167 (S.D.N.Y.2006); *see also Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower,* No. 01 Civ. 5518(MBM), 2003 WL 1751785, at *7 (S.D.N.Y. Apr. 2, 2003) ("Events occurring after the lawsuit has been filed may be relevant to whether the claim has become moot but are not relevant to whether a plaintiff has standing in the first instance.").

■ In determining "whether the alleged injury is concrete and particularized," courts must "assess whether the injury affect[s] the plaintiff in a personal and individual way, to confirm that the plaintiff has a personal stake in the controversy and avoid having the federal courts serve as merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding." *Baur v. Veneman,* 352 F.3d 625, 632 (2d Cir.2003) (citation and internal quotation marks omitted); *see also Sullivan v. Syracuse Hous. Auth.,* 962 F.2d 1101, 1106 (2d Cir.1992) ("[C]ourts generally should refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances[.]") (internal quotation marks omitted).

The Census Bureau relies on *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), to support its contention that the Plaintiffs lack standing to seek injunctive relief. In that case, the plaintiff was injured when he was placed in a "chokehold" following a routine traffic stop, even though the plaintiff did not resist arrest or otherwise threaten to use force. The plaintiff sought compensatory damages as well as an injunction against the future use of "chokeholds" by the police department unless the "proposed victim reasonably appeared to be threatening the immediate use of deadly force." *Id.* at 95, 103 S.Ct. 1660. The Court held that the plaintiff could seek monetary damages for his injuries, but could not seek injunctive relief because his alleged risk of future harm was too attenuated. Conceding that the plaintiff "may have been illegally choked by the police," *id.* at 105, 103 S.Ct. 1660, the Court determined that he had failed to establish a "sufficient likelihood that he will again be wronged in a similar way," *id.* at 111, 103 S.Ct. 1660. The Census Bureau argues that the present case is analogous because the Plaintiffs have failed to demonstrate a "sufficient likelihood" that they will apply again for employment with the Census Bureau and be subjected to the same background check procedures. (*See* Def.'s Mem. at 9–11).

### ii. *Mootness*

■ Although standing tests "[t]he requisite personal interest that must exist at the commencement of the litigation," mootness tests whether the issue remains live throughout the course of litigation. *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 395–97, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *see also Comer v. Cisneros,* 37 F.3d 775, 798 (2d Cir.1994) ("In general, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.") (internal quotation marks omitted); *Stauber v. City of N.Y.,* No. 03 Civ. 9162(RWS), 2004 WL 1593870, at *19 (S.D.N.Y. July 16, 2004) ("[T]he alleged abandonment of [a] policy presents an issue of mootness rather than standing."). Consequently, "[i]n the administrative context, an agency can moot a request for relief by showing

that the policy complained of has been replaced and that 'there appears to be no likelihood of a return to the old rule.'" *Sorbello v. Laird*, No. 06–CV–948 (JG), 2007 WL 675798, at *4 (E.D.N.Y. Feb. 28, 2007) (quoting *McKenna v. Peekskill Hous. Auth.*, 647 F.2d 332, 334 (2d Cir. 1981)).

■■■ A case also is moot when "the parties lack a legally cognizable interest in the outcome." *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). However, "a party's 'voluntary cessation of allegedly unlawful conduct ... [ordinarily] does not suffice to moot a case.' Accordingly, a party 'claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *N.Y. Pub. Interest Research Grp. v. Whitman*, 321 F.3d 316, 327 (2d Cir.2003) (internal citation omitted) (quoting *Friends of the Earth v. Laidlaw Envtl., Servs.*, 528 U.S. 167, 174, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)): *see Camreta v. Greene*, —— U.S. ——, 131 S.Ct. 2020, 2034, 179 L.Ed.2d 1118 (2011) (no live controversy exists when "subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur") (internal quotation marks and brackets omitted).

### b. *Application of Law to Facts*

■■■ As a preliminary matter, the Plaintiffs correctly characterize the issue as one of mootness rather than standing since the elements of standing are "evaluated at the time the complaint is filed." *Access 4 All*, 458 F.Supp.2d at 167. The Plaintiffs clear-

ly had standing to seek injunctive relief when the case was commenced because the Census Bureau concedes that hiring for the 2010 census still was underway at the time the Plaintiffs filed their original complaint ("Original Complaint" or "Compl."). (*See* Def.'s Mem. at 12 (the Census Bureau "ceased sending 30–day letters to 2010 Decennial applicants on July 31, 2010," more than three months after the Plaintiffs filed their Original Complaint)).

Although the Census Bureau is correct that "[s]tanding must be demonstrated for *each* form of relief sought," (ECF No. 87 (Def.'s Reply) at 3 (citing *Laidlaw*, 528 U.S. at 185, 120 S.Ct. 693) (emphasis in original)), it is not correct in its assertion that the Plaintiffs are seeking "prospective injunctive and declaratory relief concerning ... future Decennials" separate and apart from an injunction relating to the 2010 Census, (*see id.*). Instead, the Second Amended Complaint merely seeks a single injunction, enjoining the Census Bureau from "engaging in each of the unlawful policies, practices, customs and usages set forth herein," and a declaratory judgment that the practices complained of violate Title VII. (SAC ¶¶ 151–52). Because the allegedly unlawful polices complained of in the Second Amended Complaint were ongoing at the time the Plaintiffs filed their Original Complaint, they have standing to seek injunctive relief, and their claims seeking equitable relief should be dismissed only if they are moot. *See Maneely v. City of Newburgh*, 208 F.R.D. 69, 72–74 (S.D.N.Y.2002) (issue was mootness, not standing, when the challenged policy was withdrawn shortly after the plaintiff filed his notice of claim).[3]

---

3. The Plaintiffs also contend that the Census Bureau applies unlawful background screening policies when hiring workers for temporary non-decennial positions, and that hiring for those positions is continuous. (*See* ECF No. 78 (Pls.' Opp'n) at 6–7). In the absence of any allegations that the Plaintiffs have ap-

plied for such positions and that the 30–day Letter and Adjudication Criteria were used to screen applicants for those positions, the Court will not consider the hiring efforts in connection with these non-decennial positions in its analysis of standing and mootness.

The Plaintiffs' claims for injunctive and declaratory relief are moot only if the Census Bureau can show that the offending policies are no longer in place *and* that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *N.Y. Pub. Interest Research Grp.,* 321 F.3d at 327 (internal quotation marks omitted). The Census Bureau contends that it meets this standard because it allegedly stopped using the 30–day Letter and Adjudication Criteria once it concluded hiring for the 2010 census, and because "future background screening policies are likely to change dramatically" as a consequence of changes to the way in which future censuses will be conducted. (Def.'s Mem. at 14). According to the Census Bureau, a substantial portion of the 2020 census will be conducted via the internet, and new federal background check requirements will change the way the Census Bureau screens applicants for temporary employment. (*See* Decl. of Sandra Patterson, dated June 28, 2011 (ECF No. 62) ("Patterson Decl."), ¶¶ 10–13 (citing Homeland Security Presidential Directive 12 ("HSPD 12"))). The Census Bureau also contends that any potential injury to the Plaintiffs is speculative because the background screening policies for 2020 census workers will not be developed until "sometime after 2015." (Decl. of Frank A. Vitrano, dated June 27, 2011 (EFC No. 64) ("Vitrano Decl."), ¶¶ 8, 10–11).

Despite these assertions, the Census Bureau has failed to meet its "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Laidlaw,* 528 U.S. at 189, 120 S.Ct. 693 (internal quotation marks and brackets omitted). The changes to the way in which the census might be conducted in 2020 that the Census Bureau suggests will be implemented do not establish that the use of the 30–day Letter and Adjudication Criteria could not reasonably

recur. Thus, among other things, the Census Bureau has failed to demonstrate that temporary employees will not be hired for the 2020 census, or that those employees will not be subjected to background check procedures substantially similar to those used with respect to applicants for the 2000 and 2010 censuses. And while the declaration of the Assistant Division Chief for the Census Hiring and Employment Check Office asserts that the Census Bureau "has traditionally changed its background check process with each Decennial Census, and [the Census Bureau] will likely make major changes for the 2020 Decennial Census," (Patterson Decl. ¶ 14), the Census Bureau has failed to demonstrate that any such changes will include the elimination of the 30–day Letter that it allegedly has used for the last twenty years. (*See* SAC ¶ 5 (when the Census Bureau "hired temporary workers for the 2000 decennial census, it used the same background screening process as it used for the 2010 census")).

The Census Bureau's reliance on HSPD 12 also is misguided, because that directive "mandates a federal standard for secure and reliable *forms of identification,*" not *background checks.* (Patterson Decl. Ex. 9 at 1 (emphasis added)). HSPD 12 also was promulgated in 2004, several years before the background screening of applicants for the 2010 Census commenced. (*Id.*) Consequently, it does not follow that HSPD 12 will necessarily have any bearing on the background screening process of applicants for temporary positions for the 2020 Census.

In sum, although it may be true that the Census Bureau will not begin to develop background screening policies for the 2020 census until "sometime after 2015," (Vitrano Deck ¶¶ 8–11), the Census Bureau has failed to meet its heavy burden of establishing that "subsequent events ma[ke] it

absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Camreta,* 131 S.Ct. at 2034. The Plaintiffs' claims for equitable relief therefore are not moot.

### 2. *Ripeness*

 In the alternative, the Census Bureau contends that the Plaintiffs' claims are not ripe for review. "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior,* 538 U.S. 803, 807–08, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (internal quotation marks omitted). "[D]etermining whether a dispute is ripe for review requires a two-pronged analysis of [a] whether the issues presented to the district court are fit for review, and [b] what hardship the parties will suffer in the absence of review." *Connecticut v. Duncan,* 612 F.3d 107, 113 (2d Cir.2010) (citing *Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)).

 As discussed with respect to mootness, the Plaintiffs allege that the challenged policies have been in place "since at least the initiation of the 2000 census," and will likely again be applied when hiring for the 2020 census commences. (SAC ¶ 146). This case thus is distinguishable from cases in which courts have determined that pre-enforcement challenges to agency decisions are unripe. *See, e.g., Duncan,* 612 F.3d at 114 (challenge to agency decision unripe because Secretary had yet to take final action);

*Nevada v. Dep't of Energy,* 457 F.3d 78, 84 (D.C.Cir.2006) (challenge to preliminary agency decision unripe because agency had not yet made final determination); *Worth v. Jackson,* 451 F.3d 854, 861–62 (D.C.Cir. 2006) (challenge to agency policy unripe because policy was not yet written).

The Census Bureau does not dispute that the 30–day Letter and Adjudication Criteria were used in hiring temporary workers for the 2010 Census. Accordingly, this is not a case in which the agency has demonstrated an "interest in crystalizing its policy before that policy is subjected to judicial review." *Nevada,* 457 F.3d at 84. Nor has the Census Bureau demonstrated that the Plaintiffs' expressed interest in applying for positions in furtherance of the 2020 Census is disingenuous or unrealistic. (*See* SAC ¶¶ 96, 109; Decl. of Precious Daniels, dated July 28, 2011 (ECF NO. 80), 16; Decl. of Anthony Gonzalez, dated July 27, 2011 (ECF No. 82), ¶ 6).

Applying the two-pronged test outlined above, this case is fit for review because the challenged policies were applied to all applicants for temporary positions in connection with the 2010 census. The Court thus is not left in a position where it "lack[s] sufficient confidence in [its] powers of imagination to ascertain [the policies'] contours." *See Worth,* 451 F.3d at 862 (internal quotation marks omitted). Additionally, the Plaintiffs would likely suffer hardship in the absence of review because of the relatively short time period during which the Census Bureau hires temporary employees for each decennial census.

The Plaintiffs' claims therefore are ripe for review, and the Census Bureau's motion to dismiss their claims for injunctive and declaratory relief must be denied.

**B.** *Plaintiffs' Motion to Amend the Complaint*

The Court next turns to the Plaintiffs' motion for leave to amend their complaint. Before this case was assigned to me, Judge Berman "So Ordered" a Case Management Plan that required the Original Plaintiffs to amend their complaint within four months of April 13, 2010, *i.e.,* by August 13 2010. Thereafter, in *Johnson I,* the Court dismissed the individual claims of Rickett–Samuels and Anderson, as well as the Plaintiffs' class claims. In their "revised" Second Amended Complaint (*see* ECF No. 90 Ex. A), the Plaintiffs seek to add the claims of the New Plaintiffs and reassert the claims of the Dismissed Plaintiffs. The Plaintiffs further seek to amend the class claims in light of the Supreme Court's recent decision in *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).

### 1. *Standard to Amend*

▇▇▇▇ Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its complaint once as a matter of course before a responsive pleading has been served; thereafter, it may do so "only with ... the court's leave," which should "freely" be given "when justice so requires." Fed.R.Civ.P. 15(a)(2). Courts therefore usually look favorably on requests to amend under Rule 15(a). *See Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991). An amendment to add parties to a suit is further subject to Rule 21 of the Federal Rules of Civil Procedure, which permits their addition by order of the court "at any time, on just terms." *See Momentum Luggage & Leisure Bags v. Jansport, Inc.,* No. 00 Civ. 7909(DLC), 2001 WL 58000, at *1–2 (S.D.N.Y. Jan. 23, 2001). Here, because an answer has been filed, the showing necessary under Rule 21 is the same as that required under Rule 15(a). *Rissman v. City of N.Y.,* No. 01 Civ.

6284(SHS)(DF), 2001 WL 1398655, at *1 (S.D.N.Y. Nov. 9, 2001).

▇▇▇ The Plaintiffs' right to amend their complaint is also subject to Rule 16 of the Federal Rules of Civil Procedure because a pretrial scheduling order restricting their right to do so previously has been entered. *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339–41 (2d Cir.2000); *Rent–A–Center, Inc. v. 47 Mamaroneck Ave. Corp.,* 215 F.R.D. 100, 103 (S.D.N.Y.2003). Under Rule 16(b)(4), such a "schedule may be modified only for *good cause* and with the judge's consent." Fed. R.Civ.P. 16(b)(4) (emphasis added). Whether "good cause" exists turns primarily on the "diligence" of the moving party in seeking to meet the deadline in the scheduling order. *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 244 (2d Cir.2007) (citing *Parker,* 204 F.3d at 339–40). The court also may consider whether the amendment will prejudice the non-moving party. *Id.* The absence of prejudice to the non-moving party, however, is not alone sufficient to satisfy the good cause requirement of Rule 16(b)(4). *Ratcliffe v. Pradera Realty Co.,* No. 05 Civ. 10272(JFK), 2007 WL 3084977, at *1 (S.D.N.Y. Oct. 19, 2007).

▇▇▇ Finally, the Supreme Court has interpreted Rule 15 to bar an amendment if the amendment would be futile. *See Hemphill v. Schott,* 141 F.3d 412, 420 (2d Cir.1998) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). An amended claim is futile if it would not survive a motion to dismiss. *See Ricciuti,* 941 F.2d at 123,

### 2. *Venue*

The Census Bureau claims that the Plaintiffs' motion to amend the complaint should be denied, in part, because venue in this District is improper as to the Dismissed Plaintiffs and the New Plaintiffs.

As set forth below, however, the Census Bureau has waived improper venue as a defense.

### a. *Applicable Law*

 Although venue generally is governed by 28 U.S.C. § 1391, Title VII contains its own venue provision, 42 U.S.C. § 2000e–5(f)(3), which permits suit to be brought in any of three locations. That statute provides that:

> [A Title VII] action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice
> . . . .

*Id.* A defendant nevertheless may waive improper venue as a defense because venue is not jurisdictional. *See Neirbo v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168, 60 S.Ct. 153, 84 L.Ed. 167 (1939) (objection to venue "may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct"). Pursuant to Rule 12(h)(1) of the Federal Rules of Civil Procedure, a defendant waives any challenge to venue if it fails to raise that objection in a pre-answer motion or in its first responsive pleading. *See Tri–State Emp't Servs., Inc. v. Mountbatten Sur. Co.*, 295 F.3d 256, 261 n. 2 (2d Cir.2002) (defendant who "fail[s] to raise [a] venue challenge in a pre-answer motion or responsive pleading ... is deemed to have waived any objection to venue").

An exception to Rule 12(h) allows a defendant to make an otherwise untimely objection to venue if that objection was not available at the time of the filing of the pre-answer motion or responsive pleading. *See* Fed.R.Civ.P. 12(g)(2). However,

"[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading," 5C Charles Alan Wright, *Federal Practice & Procedure* § 1388, at 491 (4th ed.2009).

### b. *Application of Law to Facts*

The Census Bureau did not raise improper venue as a defense in its July 2010 motion to dismiss the Original Complaint, (*see* ECF Nos. 29–30), or its September 2010 motion to dismiss the First Amended Complaint (*see* ECF Nos. 35, 37). Instead, the first time that the Census Bureau raised improper venue as an affirmative defense was in its answer to the First Amended Complaint, filed on March 29, 2011 (*see* ECF No. 48); it raised that defense again in response to the Plaintiffs' present motion to amend (*see* ECF No. 67 ("Def.'s Opp'n")). The Census Bureau contends that its right to object to venue was not waived because it did not have the opportunity to object to venue as to the New Plaintiffs in its prior motions. The Census Bureau also argues that it has not waived improper venue as a defense to the claims of the Dismissed Plaintiffs because an amended complaint fully replaces a prior complaint.

 Turning first to the Dismissed Plaintiffs, the Census Bureau clearly has waived improper venue as a defense because it failed to assert that defense in its September 2010 motion to dismiss the claims of Rickett–Samuels and Anderson. Rule 12(h) therefore precludes the Census Bureau from raising that defense now. The exception to Rule 12(h) discussed above is inapplicable because the Census Bureau had an opportunity to object to venue as to Rickett–Samuels and Anderson in its prior motion to dismiss, but failed to do so. Venue therefore is proper as to the Dismissed Plaintiffs.

The remaining issue is whether the Census Bureau has waived its improper venue defense as to the New Plaintiffs. The critical question with respect to this aspect of the Census Bureau's motion is whether a defendant waives improper venue as a defense to the claims of proposed additional plaintiffs if the defendant previously failed to assert the defense in a timely manner against similarly-situated plaintiffs already named in the case. Here, the Census Bureau plainly could have raised improper venue under the Title VII venue statute as a defense to Houser's claims in its July 2010 motion to dismiss the Original Complaint, but it failed to do so. (*See* ECF Nos. 29–30). Indeed, the Original Complaint set forth the geographic area in which Houser lived (*see* Compl. ¶ 29), and the Census Bureau's hiring procedures required temporary employees to work in close geographic proximity to their residences.[4] (*See* Decl. of Viola Lewis Willis, dated June 28, 2011 (ECF No. 71), ¶¶ 10, 14), Furthermore, the Census Bureau clearly knew or should have known where Houser's "employment records ... [were] maintained and administered." *See* 42 U.S.C. § 2000e–5(f)(3). The Census Bureau similarly could have raised improper venue as a defense to the claims of Anderson, Gonzalez, Riesco, Daniels, or Rickett–Samuels in its September 2010 motion to dismiss the First Amended Complaint, but did not. (*See* ECF Nos. 35, 37).

Even though it failed to object to venue in its pre-answer motions, the Census Bureau contends that it has not waived its venue defense because the New Plaintiffs' claims "would drastically alter the scope and nature of the case by alleging class-wide claims related to entirely new geographic regions." (Def.'s Opp'n at 21). On this basis, the Census Bureau maintains that its failure to object to venue as to the Original Plaintiffs is irrelevant.

The New Plaintiffs' claims, however, do not "drastically alter" the scope of the lawsuit as the Census Bureau suggests. Instead, the New Plaintiffs allege class claims substantially similar to the ill-fated class action claims brought by the Original Plaintiffs. Indeed, from the time the Original Complaint was filed, the Census Bureau has been on notice that the Plaintiffs seek to bring a nationwide class action involving thousands of class members across the country. (*See* Compl. ¶ 9 (asserting class claims on behalf of all African–American, Latino, and Native American applicants for temporary jobs with the 2010 census who received a 30–day Letter, were otherwise qualified for employment, and were not hired by the Census Bureau); FAC ¶ 33 (same); SAC ¶ 33 (same)). Furthermore, all three of the New Plaintiffs reside in close geographic proximity to one or more of the Original Plaintiffs,[5] These factors belie the Census Bureau's contention that it now should be permitted to assert an improper venue defense because the New Plaintiffs' claims would "drastically alter the scope" of this case.

The few decisions to have addressed this issue further support the Plaintiffs. In *Lanehart v. Devine*, 102 F.R.D. 592 (D.Md.1984), the court held that the government waived its right to object to venue as to subsequently-named plaintiffs because it previously had failed to raise improper venue as a defense to the claims of similarly-situated named plaintiffs. *Id.* at

---

4. Houser and Johnson were the only two named plaintiffs in the Original Complaint, which recited that Houser lived in Philadelphia and Johnson lived in New York City. (*See* Compl. ¶¶ 25, 29).

5. Scott, Desphy and Original Plaintiff Houser all live in Philadelphia. Kargbo and Original Plaintiff Riesco live in Massachusetts.

593–95. The Census Bureau attempts to distinguish *Lanehart* on the ground that the Census Bureau *had* raised improper venue as a defense in its answer, while the government in *Lanehart* had not. This, however, is a red herring because Rule 12(h) makes clear that an objection to venue is waived if it is not raised in the defendant's pre-answer motion or its first responsive pleading. In this case, the Census Bureau filed two pre-answer motions that failed to raise improper venue as a defense before filing its answer. The fact that the Census Bureau objected to venue in its *subsequent* answer therefore is irrelevant.

More recently, in *Bell v. Lockheed Martin Corp.*, No. 08–6292 (RBK/AMD), 2011 WL 1467365 (D.N.J. Apr. 18, 2011), the defendant argued that it was entitled to raise venue with respect to each new plaintiff named in an amended complaint. The district judge resoundingly rejected that contention in a Title VII disparate impact case. Relying on *Lanehart*, the court explained, in part, that not allowing the defendant to raise an objection to venue at that stage of the case "further[ed] Rule 12(h)'s underlying purpose of ensuring that threshold objections such as improper venue are not asserted piecemeal." *Id.* at *9.

The reasoning in *Lanehart* and *Bell* is persuasive. Rule 12(h) "requires that a defendant raise threshold objections such as venue as soon as they are 'available.'" *Bell*, 2011 WL 1467365, at *8 (quoting Fed.R.Civ.P. 12(h)). The facts relevant to the defense of improper venue were known to the Census Bureau when it filed its motion to dismiss the Original Complaint and when it sought to dismiss the First Amended Complaint. Because the Census Bureau failed to raise improper venue as a defense in either of its pre-answer motions, Rule 12(h) prohibits it from reviving that objection with respect to subsequently-named plaintiffs situated similarly to the

Original Plaintiffs. *See id.* Accordingly, the Census Bureau has waived improper venue as a defense to the New Plaintiffs' claims. For that reason, the defense is stricken from the Census Bureau's answer.

### 3. *Transfer*

The defendants also have moved to sever each Plaintiff's claims and to transfer them to their respective home districts, or, in the alternative, to transfer the case intact to the District of Maryland, where the Census Bureau keeps its employment records. (Def.'s Opp'n at 36–40).

Under 28 U.S.C. § 1404, courts have considerable discretion in deciding such motions. The factors to be considered are: "[a] the convenience of witnesses; [b] the location of relevant documents and the relative ease of access to sources of proof; [c] the convenience of the parties; [d] the locus of the operative facts; [e] the availability of process to compel attendance of unwilling witnesses; [f] the relative means of the parties; [g] a forum's familiarity with the governing law; [h] the weight accorded to plaintiff's choice of forum; and [i] trial efficiency and the interests of justice, based upon the totality of the circumstances." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F.Supp.2d 391, 404 (S.D.N.Y.2004),

The party moving for a Section 1404 transfer bears the heavy burden of showing that a plaintiff's choice of forum should be set aside. *Friedland v. Holiday Inns. Inc.*, No. 88 Civ. 7857(PKL), 1989 WL 101942, at *1 (S.D.N.Y. Aug. 30, 1989). Thus, a plaintiff's choice of forum should not be disturbed unless a defendant has made a clear and convincing showing that the balance of convenience weighs heavily in favor of the defendant *Linzer v. EMI Blackwood Music*, 904 F.Supp. 207, 216 (S.D.N.Y.1995). Furthermore, in most cases, the most significant factor to be

considered by the court is the convenience of party and non-party witnesses. *Id.*

■ The Census Bureau contends that the claims in this case should be severed and transferred because "permitting this case to proceed as ... a vast nationwide class action ... would create an unmanageable and logistically impossible litigation, would prejudice and unduly burden the [Census Bureau], and would be contrary to judicial economy and feasible case administration." (Def.'s Opp'n at 39–40). The Census Bureau further notes that the operative facts in this case took place largely outside the Southern District of New York, suggesting that the Plaintiffs' home districts could more readily compel unwilling witnesses to testify and would prove more convenient for the Plaintiffs themselves.[6] (*Id.* at 37–38).

Although the Census Bureau's solicitude for the convenience of the Plaintiffs is impressive, even if the Court were to conclude that the Plaintiffs had engaged in forum shopping, that would not be a basis for granting the Census Bureau's transfer motion. *See Cheeseman v. Carey,* 485 F.Supp. 203, 215 (S.D.N.Y.). *remanded on other grounds,* 623 F.2d 1387 (2d Cir.1980). The other factors advanced by the Census Bureau as a basis for transferring the Plaintiffs' claims to their home districts also fall far short of demonstrating a clear and convincing reason why the Plaintiffs' chosen forum should be disturbed, given the "strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Goggins v. Alliance Capital Mgmt., L.P.,* 279 F.Supp.2d 228, 234 (S.D.N.Y.2003)

(quoting *Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 618 (2d Cir.1968)).

The Census Bureau also has failed to demonstrate that this case should be transferred to the District of Maryland. The Census Bureau notes that relevant documents are located in Maryland (*see* Def.'s Opp'n at 37), but has failed to address the Plaintiffs' assertion that those documents are also available electronically. (*See* Decl. of Samuel R. Miller, Esq., dated Aug. 3, 2011 (ECF No. 85) ("Miller Decl."), ¶¶ 3–4). The Census Bureau therefore has failed to proffer clear and convincing evidence that this case should be transferred to the District of Maryland, particularly considering that this case has been litigated before this Court for more than one year.

Ultimately, the question of whether to transfer this case, or certain of the Plaintiffs' claims, is one that is remitted to the Court's broad discretion. *See D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 106 (2d Cir.2006). Exercising that discretion, the Court has determined that the Census Bureau's request to transfer this case pursuant to 28 U.S.C. § 1404 should be denied.

### 4. *Dismissed Plaintiffs' Claims*

The Census Bureau further asserts that the Plaintiffs' motion to amend should be denied as to the claims of the Dismissed Plaintiffs because neither Rickett–Samuels nor Anderson exhausted her administrative remedies. Specifically, the Census Bureau contends that Rickett–Samuels' proposed amended claims are futile because she failed to file a timely EEO complaint, and Anderson's proposed amended claims fail because she cannot "piggyback" on the claims of Rickett–Samuels or the

---

**6.** Johnson is the only Plaintiff who applied for a census position in the Southern District of New York, and, as discussed *supra* in note 1, following his death the role that his executor may play in this case is unclear.

New Plaintiffs. For the reasons set forth below, the Plaintiffs' motion to amend the complaint is granted with respect to Rickett–Samuels' claims, but denied with respect to Anderson's claims.

### a. *Applicable Law*

#### i. *Exhaustion Requirements*

■■■■ To pursue a Title VII claim in federal court, a plaintiff ordinarily must first exhaust her administrative remedies. *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 684–85 (2d Cir. 2001). In a Title VII suit against a federal agency, the first step in the exhaustion process requires the employee to initiate contact with an agency EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." *See* 29 C.F.R. § 1614.105(a)(1); *see also id.* § 1614.204(b) (applicant "who wishes to file a class complaint must seek counseling ... in accordance with § 1614.105"). Because "[t]his timeliness requirement is not jurisdictional, ... the filing deadline is subject to waiver, estoppel, and equitable tolling." *Bruce v. U.S. Dep't of Justice*, 314 F.3d 71, 74 (2d Cir.2002). Furthermore, an "agency waives a timeliness objection by making an express finding that the complaint was timely or failing to appeal an EEOC determination of timeliness." *Id.* (citing *Briones v. Runyon*, 101 F.3d 287, 291 (2d Cir.1996)).

■■■■ The additional steps required to exhaust a Title VII claim against a federal agency vary depending on whether the plaintiff is pursuing an individual or a class claim. After initiating contact with an agency EEO counselor, a Title VII plaintiff bringing an individual discrimination claim ordinarily need only file a timely complaint with, and obtain a right-to-sue letter from, the agency's Equal Employ-

ment Opportunity Office ("EEOO"). *See* 29 C.F.R. §§ 1614.106, 1614.407; *Alenski v. Potter*, No. 03–CV–2179(SJF)(MLO), 2005 WL 1309043, at *7 (E.D.N.Y. May 18, 2005). To exhaust a claim asserted on behalf of a class, however, a Title VII plaintiff typically must do more. *See Gulley v. Orr*, 905 F.2d 1383, 1384 (10th Cir. 1990) (exhaustion procedures for class action claims against a federal agency are "markedly different than the administrative mechanism for addressing individual discrimination claims"). Specifically, pursuant to regulations first promulgated in 1977 ("Class Regulations"), an individual pursuing a class claim must file with the agency a class action complaint that contains allegations concerning numerosity, commonality, typicality, and adequacy of representation. *Compare* 29 C.F.R. § 1614.204(a)(2), *with* Fed.R.Civ.P. 23(a).[7]

Within 30 days after a class complaint is filed, the agency must forward the complaint to the EEOC, which may dismiss the complaint, or any portion thereof, on a number of grounds, including failure to meet the requirements of a class action complaint or lack of timeliness. 29 C.F.R. § 1614.204(d)(2). If the EEOC administrative judge accepts the complaint, the agency must notify class members of this development. *Id.* § 1614.204(e). Although the EEOC, rather than the agency, investigates the complaint, the Class Regulations provide an opportunity for reconciliation or a hearing if the dispute cannot be amicably resolved. *Id.* §§ 1614.204(g)-(h). At the end of the process, a class action representative who remains dissatisfied with the outcome of the administrative proceedings has 90 days to file a federal lawsuit. *Id.* § 1614.407. In addition, if the agency fails to take final action with re-

---

**7.** "There is no regulatory scheme governing the exhaustion of class complaints in *private-sector* cases." *Woodward v. Salazar*, 731 F.Supp.2d 1178, 1189 n. 9 (D.N.M.2010) (emphasis added).

spect to a complaint within 180 days after the date it was filed, the individual claimant or class action representative may file suit in federal court. *Id.* § 1614.407(b).

### ii. *Single Filing Rule*

■ Notwithstanding these detailed requirements for exhaustion, courts have held that "Title VII's administrative prerequisites must be interpreted liberally to effectuate its purpose of eradicating employment discrimination." *Cronas v. Willis Grp. Holdings Ltd.*, No. 06 Civ. 15295(GEL), 2007 WL 2739769, at *2 (S.D.N.Y. Sept. 17, 2007) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Love v. Pullman Co.*, 404 U.S. 522, 526–27, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)). Accordingly, "[f]airness, and not excessive technicality, must guide the consideration of Title VII actions." *Id.*

■ In an effort to "mitigate what might otherwise be the harsh consequences of the exhaustion requirement" in employment cases, the Second Circuit has adopted what is known as the "single filing" or "piggybacking" rule. As Judge Kaufman explained in *Snell v. Suffolk County*, 782 F.2d 1094 (2d Cir.1986), under that rule, when "two plaintiffs allege that they were similarly situated and received the same discriminatory treatment, the purposes of the exhaustion requirement are adequately served if one plaintiff has filed an EEOC complaint." *Id.* at 1101 (quoting *De Medina v. Reinhardt*, 686 F.2d 997, 1013 (D.C.Cir.1982)); *see also id.* at 1100 ("other non-filing plaintiffs may join in the action if their individual claims arise out of similar discriminatory treatment in the same time frame") (internal quotation marks and brackets omitted); *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 564 (2d Cir.2006) (same). If the non-filing and filing plaintiffs both complain of conduct in a work unit of "modest size," the "mere similarity of the[ir] grievances within the same general time frame suffices to permit the 'single filing rule'" to be applied. *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (2d Cir.1990). The rationale for this relatively low threshold is that "[i]f it is impossible to reach a settlement with one discriminatee, [there would be no reason] to assume the next one would be successful." *Id.* (citation omitted).

■ In cases involving a substantial number of plaintiffs or a class, the Second Circuit has required an additional showing intended to ensure that both the employer and the EEOC are aware of what is at stake at the conciliation stage. Thus, to take advantage of the rule in such circumstances, a non-filing plaintiff must show that the filing plaintiff's complaint or charge provides *"some indication* that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim." *Id.* (emphasis added).

■ A statement that a grievance affects persons other than the plaintiff may suffice to enable a non-filing plaintiff to piggyback on the claim of a similarly-situated filing plaintiff. Such a statement is not sufficient, however, to comply with the Class Regulations. *See Gulley*, 905 F.2d at 1385 ("[T]he weight of authority addressing this issue has held that exhaustion of individual administrative remedies is insufficient to commence a class action in federal court; rather, one of the named plaintiffs must have exhausted class administrative remedies."). Accordingly, to rely on a complaint against a federal agency, class members must show that their representative or agent filed a timely class action complaint which, among other things:

> (i) identifies the policy or practice adversely affecting the class; (ii) identifies the specific action or matter affecting the class agent; (iii) alleges the class is

so numerous that a consolidated complaint filed on behalf of all members would be impractical; (iv) alleges that there are questions of fact common to the class members; [and] (v) alleges that the claims of the class' agent are typical of the claims of the class' members.

*Woodward,* 731 F.Supp.2d at 1187 (citing 29 C.F.R. § 1614.204(a)(2)).

### b. *Application of Law to Facts*

#### i. *Rickett–Samuels*

Rickett–Samuels filed a formal complaint with the Census Bureau EEOO in March 2010. (SAC ¶ 37). She amended her complaint to include class allegations on May 13, 2010. (*Id.*). The Census Bureau subsequently held that complaint in abeyance pending the outcome of the Census Bureau's first motion to dismiss in this case. *See Johnson I,* 2011 WL 1044151, at *10. In *Johnson I,* the Court dismissed Rickett–Samuels' claim on the grounds that (a) she could not piggyback onto Houser's claim because Rickett–Samuels had filed her own EEO complaint, and (b) no final action had been taken with regards to Rickett–Samuels' complaint, and 180 days had not yet passed from the time it was filed.[8] The Court also noted that Rickett–Samuels' claim was likely untimely even if 180 days had passed (because Rickett–Samuels filed her EEO complaint almost one year after the Census Bureau rejected her application), unless, like Houser, she lacked actual or constructive notice of the 45–day filing requirement. *Id.* at *10 n. 6.

Rickett–Samuels reasserts her claims in the Second Amended Complaint, contending that she has now exhausted her administrative remedies because 180 days have elapsed since she filed her amended EEO complaint, and because she did not have actual or constructive notice of the 45–day filing requirement. The Census Bureau contends that her proposed amended claims are futile because she did not contact an EEO counselor within 45 days and waived the right to reassert her claims by not contesting the Census Bureau's first motion to dismiss.

■ Turning first to the Census Bureau's waiver argument, Rickett–Samuels clearly did not waive her right to reassert her claims. The Census Bureau filed its first motion to dismiss on September 10, 2011, but Rickett–Samuels was not authorized to sue in federal court until November 9, 2011 (180 days after she filed her amended complaint). *See* 29 C.F.R. § 1614.106. Therefore, the Census Bureau's contention that "Rickett–Samuels should not be permitted to amend her complaint now based on facts that were known *long ago*" is meritless. (Def.'s Opp'n at 10) (emphasis added). To the contrary, Rickett–Samuels was not authorized to sue until well after the Plaintiffs filed their Original Complaint, and approximately two months after the Census Bureau filed its first motion to dismiss.

■ Whether Rickett–Samuels should be permitted to amend her complaint in light of her failure to contact an EEO counselor within 45 days is a closer ques-

---

8. 29 C.F.R. § 1614.106(d) provides that "[a] complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." When a complainant files an amended complaint, "the agency shall complete its investigation within the earlier of 180 days after the last amendment to the complaint or 360 days after the filing of the original complaint...." *Id.* § 1614.106(e)(2). Rickett–Samuels therefore was not authorized to file a federal lawsuit until November 9, 2010, 180 days after her amended complaint was filed.

tion. In that regard, 29 C.F.R. § 1614.105(a) requires that:

(a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must ...

(1) ... initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory (2) The agency or the Commission *shall* extend the 45–day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them....

*Id.* (emphasis added).

Rickett–Samuels argues that the 45–day filing requirement should be tolled in her case because she had neither actual nor constructive notice of its existence. As support for this contention, Rickett–Samuels relies primarily on the EEOC decision relating to Houser's claim, which found that Houser "[could] not be expected to have read [the EEO poster advising applicants of the 45–day time limit], thereby having [ ] constructive notice, while she was at the testing site for only a brief time, *i.e.,* about an hour...." (Miller Decl. Ex. 4). Rickett–Samuels contends that the facts surrounding her claim are indistinguishable from those relating to Houser, Like Houser, Rickett–Samuels spent less than two hours at a testing location, and she denies having seen a poster advising applicants of the 45–day limit for contacting an EEO counselor. (*See* SAC ¶ 76).

In *Johnson v. Runyon,* 47 F.3d 911 (7th Cir.1995), a Seventh Circuit panel expressed "serious doubts as to whether posting a notice ... in a location that an *applicant* visits on just one occasion could ever be 'reasonably geared' to give that applicant constructive notice of the [45–day] time limit[ ]." *Id.* at 919 (emphasis added). According to that court, the analysis of whether postings are "reasonably geared" to put applicants on notice of EEO time limits "must take into account the fact that applicants, by definition, have not yet been subjected to the possibility of employment discrimination. When they enter a facility to secure an employment application, the last thing on their minds is what recourse, if any, they might have if the [agency] illegally discriminates in hiring; their immediate concern is with where and how to obtain an application and how to fill it out properly." *Id.*

The reasoning of *Johnson* and the EEOC decision concerning Houser is persuasive. Unlike an employee, an applicant for a job—particularly a temporary job—is unlikely to pay careful attention to employment discrimination-related postings, especially when the applicant is filling out an application and taking a test at a location other than the one where she will work if hired.[9]

Furthermore, the Census Bureau has not produced the poster allegedly displayed at the Stamford, Connecticut Government Center, where Rickett–Samuels took her test. In a sworn declaration, a

---

9. The cases cited by the Census Bureau all consider whether agency *employees,* rather than applicants, were on notice of the 45–day requirement, and thus are inapposite. *See, e.g., Rosario v. Potter,* No. 07 Civ. 5891(SCR)(GAY), 2009 WL 3049585, at *7 (S.D.N.Y. Sept. 23, 2009) (EEO posters put employee on constructive notice of 45–day filing requirement, where poster was displayed at the plaintiff's workplace where she

worked for over six years); *Marinelli v. Chao,* 222 F.Supp.2d 402, 411–12 (S.D.N.Y.2002) (employee had constructive notice of 45–day filing requirement because plaintiff worked for defendant for several years, defendant displayed EEO posters in the workplace and distributed handbooks and brochures with EEO information, and the collective bargaining agreement covering plaintiff's job title referenced EEO services).

former Recruiting Assistant in the Stamford Local Census Office states that he "prominently displayed" an EEO poster "approximately 11 inches wide and 17 inches tall [that] was brightly colored and easily visible," and that "[t]he poster stated, in large font, that discrimination was illegal and gave the applicants information on discrimination . . . [and] stated that individuals had to contact the EEO office within 45 calendar days of the alleged discrimination." (*See* Decl. of Daniel Pennaccia, dated Apr. 22, 2011 (ECF No. 69), ¶¶ 1, 5–6). Without having been afforded the opportunity to review the actual poster, however, the Court cannot say that it necessarily was sufficient to put Rickett–Samuels on notice of the 45–day time limit to contact the Census Bureau EEOO.

Rickett–Samuels' proposed amended claims therefore are not futile, and the Plaintiffs' motion to amend the complaint is granted as to Rickett–Samuels' claims.

### ii. *Anderson*

 Anderson seeks to reassert her dismissed claims on the theory that she should now be permitted to piggyback on the claims of Rickett–Samuels or the New Plaintiffs. Anderson received a rejection letter from the Census Bureau dated February 2, 2010. She consequently only had until March 20, 2010, to seek EEO counseling in compliance with the 45–day filing requirement. In the alternative, if Anderson failed to file an EEO complaint of her own, she could piggyback on a previously-filed claim that put the Census Bureau on notice that the 30–day Letter and Adjudication Criteria discriminated against Native Americans. However, none of the EEO complaints referenced in the Second Amended Complaint that assert claims on behalf of Native Americans was filed before March 20, 2010. Moreover, Rickett–Samuels first mentioned discrimination against Native Americans in her amended EEO complaint filed on May 13,

2010, (*see* SAC ¶ 37), and none of the New Plaintiffs filed their complaints before April 2010. (*See id.* ¶¶ 38–40). Anderson therefore cannot piggyback on the claims of Rickett–Samuels or the New Plaintiffs. It follows that the Plaintiffs' motion to amend the complaint to reassert Anderson's claims must be denied as futile.

### 5. *Class Certification*

The Census Bureau further contends that the Plaintiffs' motion for leave to file a revised Second Amended Complaint should be denied because the Plaintiffs cannot successfully certify this case as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Plaintiffs' rejoinder proceeds on the premise that the Census Bureau has challenged "the *procedure or scope* of whatever class ultimately becomes certified," but has not "attack[ed] the *viability* of the class in any meaningful way." (EFC No. 84 (Pls.' Reply) at 15 (emphasis in original)). For this reason, the Plaintiffs urge the Court to refrain from addressing the sufficiency of the class claims until the Plaintiffs file a post-discovery motion for class certification. In the alternative, the Plaintiffs ask for leave to submit supplemental briefing to address the issue in full. (*Id.* at 15 n. 14).

 In light of the Court's decision to deny the Census Bureau's motion to dismiss the Plaintiffs' claims for injunctive and declaratory relief, *see supra* Part II. A, the Plaintiffs will be allowed to amend their complaint to assert class claims on behalf of Rickett–Samuels and the New Plaintiffs. While the Plaintiffs may face an uphill battle in their attempt to certify a nationwide class of individuals seeking monetary damages, *see Wal–Mart*, 131 S.Ct. at 2557–61, when a defendant's opposition to a motion to amend involves not-yet-certified classes, it is appropriate to allow the amendment and address the de-

fendant's arguments against certification "in the context of motions to certify the proposed classes." *Presser v. Key Food Stores Co-op. Inc.*, 218 F.R.D. 53, 57 (E.D.N.Y.2003) (quoting *Acad. of Ambulatory Foot Surgery v. Am. Podiatry Ass'n*, 516 F.Supp. 378, 383 (S.D.N.Y.1981)).

 Finally, the Court will allow the Plaintiffs to amend their complaint to allege class claims under Rule 23(b)(3) in light of the Supreme Court's decision in *Wal–Mart,* which was issued after the Plaintiffs had filed their motion for leave to amend, but before the Census Bureau filed its opposition. In *Wal–Mart,* the Court held that claims for individualized monetary relief may not be certified under Rule 23(b)(2) if the monetary relief sought is not incidental to injunctive or declaratory relief. 131 S.Ct. at 2557. Instead, "individualized monetary claims belong in Rule 23(b)(3)." *Id.* at 2558. Believing that the pre-*Wal–Mart* regime permitted class claims for individualized monetary claims under Rule 23(b)(2), the Plaintiffs' failed to assert claims under 23(b)(3) in the Original Complaint or First Amended Complaint. The interest of justice is best served by allowing the Plaintiffs to amend their complaint to assert such claims in light of this recent clarification of the law regarding class actions. By allowing this amendment, the Court is in no way suggesting that the Plaintiffs will ultimately be able to pursue those class claims. Rather, the Court is simply reserving decision as to that issue until a later stage of this case.

III. *Conclusion*

For the reasons set forth above, the Census Bureau's motion to dismiss the Plaintiffs' claims for injunctive and declaratory relief (ECF No. 61) is denied, and the Plaintiffs' motion for leave to amend (ECF No. 52) is denied with respect to Anderson's claims, and granted in all other respects. Consequently, Plaintiffs Johnson, Houser, Gonzalez, Riesco, and Daniels may assert individual claims, and Plaintiffs Rickett–Samuels, Scott, Desphy, and Kargbo may assert both individual and class claims.

SO ORDERED.