**WAUSAU BUSINESS INSURANCE COMPANY as subrogee to the rights of Central Synagogue, Plaintiff,**

v.

**TURNER CONSTRUCTION COMPANY, Amis Inc. and Aris Development Corporation, Defendants.**

**Turner Construction Company, Third–Party Plaintiff,**

v.

**Trident Mechanical Systems, Inc., Trident Mechanical Systems, Inc., a division of Dualstar Technologies Corp., Trident Mechanical Systems, Inc., a wholly-owned subsidiary of Dualstar Technologies Corp., Dualstar Technologies Corp., Atkinson Koven Feinberg Engineers LLP, Schuman Lichtenstein Claman Efron Architects, Central Synagogue, and Amtex Electrical Corp., Third–Party Defendants.**

**Central Synagogue, Fourth–Party Plaintiff,**

v.

**Accordia, Inc. and Accordia, Inc., d/b/a Accordia Northeast, Fourth–Party Defendants.**

**No. 99 CIV 0682 RWS.**

United States District Court, S.D. New York.

April 25, 2001.

Cozen & O'Connor, New York City (Michael J. Sommi, Christopher C. Fallon, Jr., of Counsel), for Plaintiff.

Jones Hirsch Connors & Bull, New York City (Chris Christofides, James H. Rodgers, of Counsel), for Defendant/Third–Party Plaintiff.

Margolis Edelstein, Philadelphia, PA (Michael P. McKenna, of Counsel), McKeegan, McShane & Drago, New York City (George P. McKeegan, of Counsel), for Third–Party Defendants Dualstar Technologies and Trident Mechanical Systems.

## OPINION

SWEET, District Judge.

This action seeks damages for the reconstruction of New York City's Central Synagogue Sanctuary (the "Synagogue"), which was destroyed by a fire while being renovated on August 28, 1998. Third-party defendant Trident Mechanical Systems, Inc. ("Trident"), which contracted with Central Synagogue to do mechanical work associated with the renovations, is a wholly-owned subsidiary of third-party defendant Dualstar Technologies Corp. ("Dualstar"). Pursuant to Fed.R.Civ.P. 56, Dualstar moves for summary judgment on the grounds that (1) it had no contract with any of the parties in this action nor owed them any duty of care; and (2) there is no evidence to support piercing the corporate veil to hold Dualstar liable for Trident's conduct. Defendant/third-party plaintiff Turner Construction Company ("Turner") opposes the motion. For the reasons set forth below, the motion will be denied.

### Facts

Both Trident and Dualstar are Delaware corporations. (Dualstar Rule 56.1 Statement ¶¶ 1, 2.) At all times relevant to this action, Trident was a wholly owned subsidiary of Dualstar. (Dualstar Rule 56.1 Statement ¶ 3; Turner Rule 56.1 Statement ¶ 3.)

On February 20, 1998, Trident contracted with Central Synagogue to conduct electrical work on the Synagogue in connection with its renovations. Dualstar was neither a party to nor mentioned in the contract. (McKenna Aff. Ex. B.) Dualstar has no contractual relationship with any other party to this action. However, another Dualstar subsidiary, Integrated Control Enterprises, Inc. ("Integrated"), was assigned to perform the control wiring for the HVAC system for which Trident conducted the mechanical work. (Turner Rule 56.1 Statement ¶ 11.)

Dualstar alleges that it and Trident were distinct business entities operating at arms length which maintained separate corporate records, bank accounts, officers, employees, offices, addresses and phone numbers. (Dualstar Rule 56.1 Statement

¶¶ 4–9; Del Bono Aff.; Cuneo Aff.) Dualstar has submitted only Trident's contract with Central Synagogue and affidavits from Dualstar's President and Chief Executive Officer since 1995, Gregory Cuneo ("Cuneo") and Trident's former Vice President, Louis Del Bono ("Del Bono"), in support of this contention.

Turner disputes these allegations and contends that Dualstar's practice was to overlap its officers and directors with those of its subsidiaries, to "bundle" contracts of its subsidiaries to service customers such as Central Synagogue, and to control the finances of subsidiaries such as Trident. (Turner Rule 56.1 Statement ¶¶ 4–9, 11–12.) In opposition to Dualstar's affidavits, Turner has submitted portions of deposition testimony provided by Del Bono; Trident's president in 1998, Peter Vrankovic ("Vrankovic"); Craig Patella; and press releases, income statements, an insurance policy, and New York Department of State filings from Dualstar. (Rodgers Aff. Exs. A–H.)

### Prior Proceedings

The circumstances giving rise to this action and its early history have been set forth in a prior opinion of his Court, familiarity with which is assumed. *See Central Synagogue v. Turner Const. Co.,* 64 F.Supp.2d 347 (S.D.N.Y.1999). Relevant proceedings are set forth below.

Central Synagogue originally filed a complaint in the New York Supreme Court on February 25, 1999, seeking amounts in subrogation against defendants Turner, Amis Inc. ("Amis"), and Aris Development Corporation ("Aris," and, together with Turner and Amis, the "Defendants"). Central's complaint alleges state law claims of breach of contract, negligence, and breach of fiduciary duty, and seeks damages for uninsured losses sustained in the fire.

On December 27, 1999, Turner filed an Amended Third Party Complaint in this Court against third-party defendants Trident (as both a division and wholly-owned subsidiary of Dualstar), Dualstar, Atkinson Koven Feinberg Engineers, LLP ("AKF"), Schuman Lichtenstein Claman Efron Architects ("SLCE") and Central Synagogue (collectively the "third-party defendants"). Counterclaims were filed in both the state and federal actions. Central Synagogue filed a complaint against the third-party defendants on February 2, 2000.

By order of June 28, 2000, the state action and this action were determined to be "coordinated cases," as a result of which the rights and liabilities of all parties are to be decided by this Court.

On May 22, 2000, Central Synagogue filed a Fourth Party Complaint against Fourth Party Defendant, Acordia, Inc. ("Acordia"). That action was consolidated with the instant case by order of July 28, 2000.

Turner filed a Second Amended Complaint on February 8, 2001, adding Amtex Electrical Corporation ("Amtex") as a third-party defendant. Among other claims, the Second Amended Complaint alleges negligence and breach of contract against Trident and Dualstar. Both Trident and Dualstar have filed counterclaims against Turner and cross-claims against the remaining third-party defendants.

Dualstar filed the instant motion on March 14, 2001. Turner filed a brief in opposition on April 18, 2001, whereupon the motion was deemed fully submitted.

### Discussion

#### I. *Legal Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment may be granted when "there is no genuine issue as to any mate-

rial fact and that the moving party is entitled to a judgment as a matter of law." The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)); *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir.1995); *Burrell v. City Univ.*, 894 F.Supp. 750, 757 (S.D.N.Y.1995). If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate. *See Burrell*, 894 F.Supp. at 758 (*citing Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991)).

Materiality is defined by the governing substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985).

■ However, "the issue of corporate disregard is generally submitted to the jury." *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 59 (2d Cir.1988) (*citing Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 53 (2d Cir.1984) (listing appropriate criteria under New

York law for jury to decide whether corporate veil should be pierced), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988)).

While all reasonable ambiguities and inferences should be resolved against the moving party, those inferences must be supported by affirmative facts and must be based on relevant, admissible evidence. *See* Fed.R.Civ.P. 56. A party seeking to defeat a summary judgment motion cannot " 'rely on mere speculation or conjecture as to the true nature of facts to overcome the motion.' " *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995) (citation omitted).

## II. *Piercing the Corporate Veil*

■■ Courts may pierce the veil cloaking a parent corporation from liability for the conduct of its subsidiary if "necessary to prevent fraud *or* to achieve equity." *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir.1979) (*quoting Port Chester Elec. v. Atlas*, 40 N.Y.2d 652, 656, 389 N.Y.S.2d 327, 331, 357 N.E.2d 983, 986 (1976)) (emphasis added). As a general rule, a party seeking to pierce the corporate veil must demonstrate that "the two corporations operated as a single economic entity such that it would be inequitable . . . to uphold a legal distinction between them." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir.1995) (internal quotation marks and citations omitted); *see also* 1 Fletcher Cyclopedia, § 41.20, at 596 ("The alter ego doctrine is applied to avoid the inequity of one corporation using another corporation to shield itself from liability.").

### A. *Choice of Law*

■ Under New York's choice of law principles, "[t]he law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." *Fletcher*, 68

F.3d at 1456 (*quoting Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir.1993)). Because Trident and Dualstar are Delaware corporations, Delaware law determines whether Dualstar may be held liable for Trident's conduct. *Id.; Gabriel Capital, L.P. v. NatWest Finance, Inc.*, 122 F.Supp.2d 407, 432 (S.D.N.Y.2000).

■ However, both Dualstar and Turner cite *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131 (2d Cir.1991) and other New York state cases as enumerating the relevant standards for piercing the corporate veil. In 1991, two years before the rule employed in *Fletcher* was established, *Passalacqua* applied New York substantive law despite the fact that New York's choice of law rules might otherwise have warranted the application of Florida law. 933 F.2d at 137. The *Passalacqua* Court reasoned that the parties had agreed to employ New York law by relying solely upon New York law in briefing the veil-piercing issue, and that in any case, Florida and New York standards for piercing the corporate veil were "virtually identical." *Id.; see also Heller*, 730 F.2d at 52 (under New York law, "in the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied.").

The New York cases cited by the parties in this case do not involve Delaware corporations, and are therefore substantively inapposite according to *Fletcher*'s more recent and more specific choice of law rule. There is apparently no choice of law provision in the contract between Trident and Central Synagogue. (McKenna Aff. Ex. B.) Notwithstanding *Fletcher*, some courts have followed *Passalacqua* and adopted the law the parties agree to employ rather than the law of the state of incorporation where there is no substantive difference between the two state law approaches to piercing the corporate veil. *See, e.g., Quinn v. Teti*, 234 F.3d 1262, 2000 WL 1616806 (2nd Cir. Oct. 27, 2000) (table) (summarily affirming district court's application of New York law to veil-piercing of Idaho corporation where the parties had agreed to apply New York law); *Kempf v. Mitsui Plastics, Inc.*, No. 96 Civ. 1106(HB), 1996 WL 673812, *3 & n. 1 (S.D.N.Y. Nov.20, 1996) (applying law briefed by the parties rather than law of state of incorporation); *S.J. Berwin & Co. v. Evergreen Entertainment Group, Inc.*, No. 92 Civ. 6209(WK), 1995 WL 606094, *2 & n. 2 (Oct. 12, 1995) ("Although it is clear that Delaware law should have applied to the piercing claim from the outset ... the conduct of the parties, and the fact that Delaware's piercing standard is not all that different from the one used in New York suggest that New York law should continue to apply.").

As the standards for piercing the corporate veil are substantially similar under Delaware and New York law, *see, e.g., Harrison v. NBD Inc.*, 990 F.Supp. 179, 183 (E.D.N.Y.1998) (noting similarity in standards for piercing corporate veil in New York and Delaware), New York law will be applied as per the parties' submissions.

## B. New York Law

■ New York law allows courts to pierce the corporate veil either where a fraud has been committed, or where the corporation has been so dominated by an individual or corporate parent that the subsidiary is relegated to the status of a mere shell, instrumentality, or alter ego. *See Passalacqua*, 933 F.2d at 138; *Carte Blanche*, 2 F.3d at 25 (courts may pierce veil in one of two circumstances: "to prevent fraud or other wrong, or where a parent dominates and controls a subsid-

iary."); *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698, 703 (2d Cir.1990) ("New York law allows the corporate veil to be pierced either when there is fraud or when the corporation has been used as an alter ego.") (emphasis in original); *Gartner*, 607 F.2d at 586 ("Because New York courts disregard corporate form reluctantly, they do so only when the form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation ..., and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.").

■ Dualstar contends that the corporate parent's domination of the subsidiary must have been designed for the purpose of injuring a party to the action in order to pierce the corporate veil pursuant to New York law. However, Turner need not demonstrate this element in order to prevail. The *Passalacqua* Court, although construing New York law to require that the domination have led to the wrong at issue, 933 F.2d at 138, affirmed the jury's piercing of the parent's veil in order to impose liability for damages arising out of its subsidiary's construction contract breach. The Court did not require any showing that the relationship between the two corporations had any causal relationship to the contract dispute, but instead found that the disregard for the corporate form was itself sufficient to warrant piercing the veil for equitable reasons. 933 F.2d at 140. In light of this reasoning, in this contract action, Turner need not show that the relationship between Dualstar and Trident had any bearing on the conduct that gave rise to this action.

■ Whether a subsidiary is an alter ego of its corporate parent is a fact-intensive inquiry that must take into consider-

ation a variety of factors: (1) failure to observe corporate formalities; (2) undercapitalization; (3) intermingling of corporate funds; (4) overlap in corporate officers, directors, and personnel; (5) common office space, address and telephone numbers; (6) the amount of business discretion exercised by the subsidiary corporation; (7) whether the two companies deal with each other at arm's length; (8) whether the corporations exist as independent sources of profit; (9) the guarantee of the subsidiary's debts by the parent; and (10) common use of corporate property. *Passalacqua*, 933 F.2d at 139; *see also William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir.1989) ("failure to pay dividends, insolvency at the time of a transaction, siphoning of corporate funds by the dominant shareholder and nonfunctioning of other officers and directors, either individually or in combination, may evidence a corporation that is a mere shell and therefore susceptible to being bypassed in fashioning an appropriate remedy."); *Heller*, 730 F.2d at 53 (citing, *inter alia*, absence of corporate formalities and perpetration of fraud by means of corporate vehicle as relevant factors in piercing corporate veil). No single one of these factors is dispositive; "liability is imposed to reach an equitable result." *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 18 (2d Cir.1996) (citation and internal quotations omitted).

### III. *The Motion for Summary Judgment Is Denied*

■ As Dualstar was not a party to Trident's contract with Central Synagogue, it owed no direct duty of care to Central Synagogue. *See Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Intern., Inc.*, 2 F.3d 24, 25 (2d Cir.1993) ("Generally speaking, a parent corporation and its subsidiary are regarded as legally

distinct entities and a contract under the corporate name of one is not treated as that of both."). Nonetheless, summary judgment is inappropriate because Turner has established a genuine question of material fact as to whether Dualstar dominated Trident to the extent that Dualstar may be held liable for Trident's conduct.

Trident and Dualstar had different telephone numbers at the same address, 11–30 47th Avenue, Long Island City, New York. While it is unclear whether they share office space within that building, Dualstar is authorized to receive service of process for Trident at that address. (Rodgers Aff. Ex. H.)

The deposition testimony of former Trident president, Peter Vrankovic ("Vrankovic"), reveals that Dualstar was the sole source of Trident's funding, both during the initial incorporation and during its subsequent operation. (Rodgers Aff. Ex. B at 9–11.) Vrankovic's testimony does not indicate that the funds Dualstar provided to Trident were structured as loans, but rather suggests that Dualstar was repaid directly from Trident's profits. (Rodgers Aff. Ex. C at 9–12 (Vrankovic).)[1] Vrankovic also testified that he left Trident in part due to uncertainty about where Trident's profits were going. (See Turner Br. at 9–10.) In addition, Dualstar, Trident, Integrated and CMA are covered by the same insurance policy. (Rodgers Aff. Ex. F (Kemper Insurance Policy) at "Named Insured" unnumbered page (CC 76 49).) These unrebutted facts demonstrate that the two companies are more financially intertwined than the average parent and subsidiary. *See Passalacqua,* 933 F.2d at 139.

Moreover, evidence submitted by Turner establishes that Dualstar has a practice of sharing corporate officers with its subsidiaries, including Trident. (Rodgers Aff. Ex. E at 19–24.) Most notably, "Gregory Cuneo is the Chairman or CEO of Dualstar and three of its wholly owned subsidiaries" Trident, Integrated, and CMA. Joseph Chan is the Vice President and Chief Financial Officer of both Dualstar and Integrated. Steven Yager served as Dualstar's Executive Vice President at the same time he held that position at CMA. Ronald Fregara, who was another Executive Vice President at Dualstar, held that position at the same time as he served as President of CMA. Trident's former project manager, Craig Patella, now holds the same position at CMA. This overlap of corporate officers indicates that Dualstar and Trident may not be as independent as Dualstar claims. *See Passalacqua,* 933 F.2d at 139.

These facts suggest that the relationship between Dualstar and Trident went beyond the mere "interlocking directorates" between parent and subsidiary that are a "commonplace circumstance of modern business," *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir.1988), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). As in *Passalacqua,* where the Court affirmed piercing the corporate veil to hold a parent corporation liable for the breach of its subsidiary's construction contract, Turner has presented sufficient admissible evidence pertaining to financial control, intermingling of funds, and overlap of officers, to raise genuine questions of material fact. The issue of Dualstar's liability for Trident's conduct in relation to the destruction of the Central Synagogue should therefore be assessed by a jury.

---

1. Turner also cites the deposition Gregory Cuneo, but no excerpts were submitted in connection with this motion.

## Conclusion

For the foregoing reasons, Dualstar's motion for summary judgment is denied.

It is so ordered.