**SOROOF TRADING DEVELOPMENT COMPANY, LTD., Plaintiff,**

v.

**GE MICROGEN, INC., and Plug Power, Inc., Defendants.**

No. 10 Civ. 1391 (LTS) (JCF).

United States District Court, S.D. New York.

May 11, 2012.

James R. Lynch, Esq., Lynch Daskal Emery, LLP, New York, NY, Haig V. Kalbian, Esq., Mary M. Baker, Esq., Aaron W. Knights, Esq., Kalbian Hagerty LLP, Washington, DC, for Plaintiffs.

Thomas E. Healy, Esq., Pino & Associates, LLP, White Plains, NY, Michael D. Fisse, Esq., Jan Van Steenis, Esq., John Dubreil, Esq., Daigle, Fisse & Kessenich PLC, Covington, LA, Abigail K. Hemani, Esq., Goodwin Procter, LLP, New York, NY, Dahlia S. Fetouh, Esq., Lauren S. Kupersmith, Esq., Goodwin Procter LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

JAMES C. FRANCIS IV, United States Magistrate Judge.

This is an action for breach of contract and misrepresentation against defendants GE Microgen, Inc. ("GE Microgen") and Plug Power, Inc. ("Plug Power"), who were the members of the now-defunct GE Fuel Cell Systems, LLC ("GEFCS"). Plaintiff Soroof Trading Development Company Ltd. ("Soroof") seeks leave to amend its complaint to add the General Electric Company ("GE") as a defendant. For the reasons that follow, the motion is granted.

### Background

The following facts are taken from the proposed second amended complaint. GEFCS was a Delaware limited liability company established in 1999 as a joint venture between GE Microgen, a wholly-owned subsidiary of GE, and Plug Power. ([Proposed] Second Amended Complaint ("PSAC"), attached as Exh. A to Declaration of Aaron W. Knights dated March 16, 2012 ("Knights Decl."), ¶¶ 6, 8, 18). GE was also a major shareholder of Plug Power. (PSAC, ¶ 7). In June 2000, GEFCS and Soroof entered into an agreement under which, for a $1 million distribution fee, Soroof would have the right to distribute in Saudi Arabia GEFCS-produced fuel cells meeting certain specifications. (Distributor Agreement dated June 6, 2000 ("Agreement"), attached as Exh. 1 to PSAC, ¶¶ 1–2.4, 6.4). GEFCS was to use reasonable efforts to supply fuel cells meeting the performance specifications to Soroof, and Soroof was to use its best efforts to sell and promote the fuel cells. (Agreement, ¶¶ 5.2, 6–1). In addition, the parties were to share relevant information about the product. (Agreement, ¶ 7.4). In reliance on the Agreement, Soroof "expended in excess of $1 million." (PSAC, ¶ 32).

Soroof asserts that GE, GE Microgen, and Plug Power knew by the time GEFCS was formed that there was a "strong possibility that the [contemplated fuel cells] would never be marketable." (PSAC, ¶ 19). Notwithstanding this knowledge, the defendants repeatedly misrepresented to Soroof that the project would succeed. (PSAC, ¶¶ 22, 24, 29–30, 39–40, 47). As it turned out, GEFCS was not able to make fuel cells that met the specifications in the Agreement, and allegedly abandoned development within a year. (PSAC, ¶¶ 37, 41, 47). Soroof's $1 million distribution fee "was diverted to defray the salaries of GE employees whom GE had tasked to [GEFCS]." (PSAC, ¶ 28). In 2006, GE, GE Microgen, and Plug Power dissolved GEFCS without informing Soroof, which became aware of the dissolution in 2007. (PSAC ¶¶ 8, 51, 56–58). This litigation eventually ensued. The remaining causes of action are for breach of contract

and misrepresentation. (First Amended Complaint ("FAC"), ¶¶ 57–85).

The plaintiff filed its original complaint in February 2010 against GEFCS, GE Microgen, and Plug Power. (Complaint ("Compl.") at 1). On June 4, 2010, the parties filed a joint preliminary pre-trial statement, which included as an attachment a proposed two-phased discovery schedule. (Preliminary Pre-trial Statement filed June 4, 2010, Exh. A at 1–2; Proposed Discovery Plan and Schedule, undated ("Proposed Discovery Plan"), attached as Exh. D to Knights Decl., at 1–2). Under the proposed schedule, the deadline for joinder of additional parties and amendments to pleadings was October 31, 2010. (Proposed Discovery Plan at 2). On June 11, 2010, the Honorable Laura Taylor Swain, U.S.D.J., issued a pre-trial scheduling order that set a deadline of August 31, 2010, for applications for joinder or amendment of pleadings. (Pre-trial Scheduling Order dated June 11, 2010 ("Scheduling Order"), at 1).

Discovery commenced, and Soroof deposed GEFCS president Frank Scovello on September 2, 2010. (Transcript of Deposition of Frank Scovello dated September 2, 2010 ("Scovello Dep."), attached as Exh. E to Knights Decl., at 1). On October 20, 2010, defendants GE Microgen and Plug Power filed a motion for judgment on the pleadings seeking dismissal of all six of the causes of action outlined in the complaint. (Memorandum of Law in Support of Defendant GE Microgen, Inc.'s Motion for Judgment on the Pleadings dated Oct. 20, 2010; Defendant Plug Power Inc.'s Joinder in Defendant GE Microgen, Inc.'s Rule 12(c) Motion dated Oct. 20, 2010). On October 29, 2010, Soroof filed a motion seeking leave to file an amended complaint and modification of the scheduling order. (Plaintiff's Memorandum of Law in Support of its Motion for Leave to Amend the Complaint and to Modify the Scheduling Order dated Oct. 29, 2010 ("First Motion to Amend")). That motion sought, first, an extension of each of the dates in the Proposed Discovery Plan by 60 days and, second, permission to amend the complaint "merely [to add] a new [defendant]—General Electric Company, Inc.[,] on a veil-piercing theory" based on "facts uncovered by Soroof in the course of ... discovery." (First Motion to Amend at 4, 8, 16). The proposed first amended complaint, which was attached as an exhibit, included the same causes of action as the original complaint, but named GE as an additional defendant. ([Proposed] First Amended Complaint, attached as Exh. A to Declaration of Mary M. Baker dated Oct. 29, 2010, at 2–3, 9–16). The defendants opposed the application, arguing that amendment would be futile and also noting that the plaintiff had missed the August 31, 2010 deadline for amendments to pleadings. (Defendant Plug Power Inc.'s Opposition to Plaintiff's Motion to Amend dated Nov. 15, 2010, at 2; Defen[d]ant GE Microgen Inc.'s Opposition to Plaintiff's Motion for Leave to Amend dated Nov. 15, 2010, at 2, 11).

On December 1, 2010, after a conference with the parties, I issued an order denying Soroof's First Motion to Amend "without prejudice to renewal following determination of [the] defendants' pending motion for judgment on the pleadings and their anticipated motion for summary judgment." (Order dated Dec. 1, 2010 ("Dec. 1 Order") at 2). Plaintiff's counsel recognized that it was unclear whether the motion to amend should be evaluated solely under Rule 15 of the Federal Rules of Civil Procedure or also under Rule 16, but consented to the denial provided that the status quo would be preserved until Judge Swain ruled on the dispositive motions—that is, that the Court would "stop [ ] the clock" and plaintiff would not "be prejudiced by any delay that might happen." (Hearing Transcript dated Dec. 1, 2010 ("Tr.") attached as Exh. B to Knights Decl., at 56–57).

On January 24, 2012, Judge Swain ruled on four outstanding motions—the defendants' motions for judgment on the pleadings and for summary judgment, and the plaintiff's motions for partial summary judgment and for sanctions. (Order dated Jan. 24, 2012 ("Jan. 24 Order") at 1–2). The order granted the defendants' motion for judgment on the pleadings and dismissed with prejudice four of the plaintiff's six claims. (Jan. 24 Order at 28). However, Judge Swain also granted Soroof's motion for partial summary judgment, which argued that it should be able to

pierce GEFCS' corporate veil to proceed against its members, defendants GE Microgen and Plug Power. (Jan. 24 Order at 26–28). Consequently, Judge Swain dismissed the plaintiff's first two causes of action "without prejudice to repleading" to add relevant facts to support the claims. (Jan. 24 Order at 12, 13, 28). The deadline for this amendment was February 10, 2012. (Jan. 24 Order at 28).

Soroof filed the first amended complaint in mid-February.[1] As relevant here, the first amended complaint differs from the earlier proposed first amended complaint by alleging additional facts that would tend to show that GEFCS was an alter ego of GE. For example, the first amended complaint contains the following new allegations: "at all times GE maintained complete dominion and control over [GEFCS]"; GEFCS did not have an office or employees of its own, "GE provided all of the financing for [GEFCS]"; "[GEFCS] was run by GE itself"; GEFCS' management committee "was dominated and controlled by GE"; and "[a]t all times [GEFCS] was a shell entity under the dominion and control of its parents, GE Microgen and Plug Power[,] and its grandparent, GE." (FAC, ¶¶ 10–14, 59). Also, unlike the proposed first amended complaint, the filed first amended complaint does not name GE as a defendant. (FAC, ¶¶ 4–6).

On March 16, 2012, Soroof filed this motion for leave to amend the complaint. The proposed second amended complaint pleads the same two causes of action as the first amended complaint. (PSAC, ¶¶ 67–97). However, it adds GE as a named defendant. (PSAC, ¶ 5). The proposed second amended complaint adds further facts to the allegations in the first amended complaint regarding GE's relationship with GE Microgen, Plug Power, and GEFCS, asserting that, in discovery,

Soroof learned that "GE [ ] controlled and dominated [GEFCS] directly through GE Microgen and Plug Power, [ ] employed all officers and personnel assigned to [GEFCS]; and [ ] caused [GEFCS'] dissolution in 2006." (PSAC, ¶ 9). A new section of the complaint, titled "Veil Piercing/Alter Ego,"[2] includes allegations that GEFCS was a "mere instrumentality and alter ego of GE"; that GE paid and controlled GEFCS' employees and leased its office space; that GEFCS' president was a GE employee; that GE Microgen was "wholly undercapitalized," so that GEFCS was actually supported by GE; that a GE employee "served as director for GE Microgen, a member of the management committee for [GEFCS] and as a member of Plug Power's board of directors"; and that "GE directly caused harm to Soroof through its employees and using these entities as described [ ] and by causing the dissolution of [GEFCS]." (PSAC, ¶¶ 60–66). Both defendants oppose the motion. (Defendant GE Microgen Inc.'s Opposition to Plaintiff's Renewed Motion for Leave to File Amended Complaint dated March 30, 2012 ("GE Microgen Opp."); Defendant Plug Power Inc.'s Opposition to Plaintiff's Motion for Leave to File Amended Complaint dated March 30, 2012 ("Plug Power Opp.")).

*Discussion*

A. *Legal Standard for Amendment*

A party may amend its complaint without leave of court up to 21 days after the service of either a responsive pleading or certain motions under Rule 12 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 15(a)(1). After that time has run, amendment requires the consent of the opposing parties or leave of court. Fed.R.Civ.P. 15(a)(2). According to the rule, a court should "freely give leave when justice so

---

1. The docket reflects a filing date of February 14, 2012, four days after the deadline. However, plaintiff's counsel has represented that the first amended complaint was hand-delivered to the Court on February 10, 2012. (Email of Aaron W. Knights dated Feb. 15, 2012, attached as Exhibit 1 to Declaration of Aaron W. Knights dated April 16, 2012).

2. In both the case law and the papers here, "piercing the corporate veil" is used as a syn-

onym for an alter ego theory of liability. *See Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260, 266 (D.Del.1989) ("The terminology used by courts in considering whether a parent corporation will be held liable for the actions of its subsidiary have *not* been a *model* of clarity. [The] so-called 'alter ego theory' is often used interchangeably with such expressions as 'disregarding the corporate entity' and 'piercing the corporate veil.' ").

requires." Fed.R.Civ.P. 15(a)(2). If the amendment seeks to add a party, Rule 21 of the Federal Rules of Civil Procedure, which allows addition of a party "at any time, on just terms," also comes into play. Fed. R.Civ.P. 21. However, that creates no additional obstacle, as the "showing necessary under Rule 21 is the same as that required under Rule 15(a) [2]." *Johnson v. Bryson,* 851 F.Supp.2d 688, 703, 2012 WL 983563, at *9 (S.D.N.Y. March 22, 2012). Under both Rules 15 and 21, leave to amend may be denied where the proposed amendment would be futile or where it would result in prejudice to the opposing parties. *Williams v. Citigroup, Inc.,* 659 F.3d 208, 214 (2d Cir.2011) (per curiam); *Aetna Casualty & Surety Co. v. Aniero Concrete Co.,* 404 F.3d 566, 603 (2d Cir.2005). Amendment is futile if the proposed amended complaint could not survive a motion to dismiss. *See Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991). Prejudice arises when the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993).

 Rule 16 of the Federal Rules of Civil Procedure imposes an added hurdle where a "pretrial scheduling order restricting the[ ] right to [amend] ... has [previously] been entered." *Johnson,* 851 F.Supp.2d at 703, 2012 WL 983563, at *9 (citing *Parker v. Columbia Pictures Industries,* 204 F.3d 326, 339–41 (2d Cir.2000), and *Rent–A–Center, Inc. v. 47 Mamaroneck Avenue Corp.,* 215 F.R.D. 100, 103 (S.D.N.Y.2003)). Such an order "may be modified only for good cause." Fed.R.Civ.P. 16(b)(4). Thus, the lenient standard of Rule 15(a) is toughened by Rule 16's higher standard under which the party seeking to amend must also demonstrate good cause for an untimely amend-

ment.[3] *See Holmes v. Grubman,* 568 F.3d 329, 334–35 (2d Cir.2009) ("[T]he lenient standard under Rule 15(a) ... must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." (internal quotation marks omitted)); *Johnson,* 851 F.Supp.2d at 703, 2012 WL 983563, at *9. Good cause is demonstrated by a showing that "despite its having exercised diligence, the applicable deadline could not have been reasonably met" by the plaintiff. *Oscar v. BMW of North America,* No. 09 Civ. 11, 2011 WL 6399505, at *2 (S.D.N.Y. Dec. 20, 2011) (internal quotation marks omitted). Thus, if the proposed amendment relies on information that the party knew or should have known prior to the deadline, leave to amend is properly denied. *Id.*

## B. *Determination of Governing Rules*

 The parties disagree about whether Rule 16 applies to this motion. The answer to that question turns on the whether the motion is timely filed under a scheduling order in place in this action. If it is timely filed, only Rule 15's liberal standard governs; if it is not, Soroof must also show good cause for the amendment under Rule 16.

Soroof argues that this motion merely "[r]enew[s]" its previous motion to amend as contemplated in the December 1 Order, and it should therefore be deemed filed as of October 29, 2010, the date of the First Motion to Amend. (Plaintiff's Memorandum of Law in Support of Renewed Motion for Leave to File Amended Complaint dated March 16, 2012 ("Pl. Memo."), at 1 & n. 1, 10). According to Soroof, this earlier filing date renders the motion timely under the parties' agreed-upon schedule, which required joinder and amendments to pleadings by October 31, 2010. (Pl. Memo. at 10–11; Proposed Discovery Plan at 2). However, the second step in the plaintiff's argument is flawed.

---

3. Here, the plaintiff is attempting to amend the complaint to include new allegations, as well as amend to add a new party. Courts in this district have concluded that Rule 16's good cause standard is applicable to both types of amendment. *See, e.g., Lawrence v. Starbucks Corp.,* No.

08 Civ. 3734, 2009 WL 4794247, at *3 n. 4 (S.D.N.Y. Dec. 10, 2009) (citing *International Media Films, Inc. v. Lucas Entertainment, Inc.,* No. 07 Civ. 1178, 2008 WL 781823, at *1–3 (S.D.N.Y. March 20, 2008)).

The purported agreement by which Soroof seeks to establish timeliness was never adopted by the court. Rather, Judge Swain's initial scheduling order required amendments to pleadings, including those adding parties, to be made by August 31, 2010. (Scheduling Order at 1). The Scheduling Order specifies that adjournments would be entertained only "in the Court's discretion upon good cause shown in a written application." (Scheduling Order at 5). Soroof's asseverations that the parties "at all times proceeded in accordance" with the schedule they allegedly agreed upon (Pl. Memo. at 1, 10), and that the court "made clear ... that the parties could agree amongst themselves upon phased discovery" (Pl. Memo. at 10 n. 6), does not change the fact that a scheduling order requiring amendment to pleadings by August 31, 2010, was in place unless and until the court adjourned that deadline (Scheduling Order at 1, 5).[4] To be sure, the plaintiff's first motion for leave to amend also requested an extension of the deadlines in its proposed discovery schedule. (First Motion to Amend at 15–16). However, that application was denied without prejudice and the requested extensions of time were rendered moot. (Dec. 1 Order at 2). Therefore, the present motion for leave to amend is subject to Rule 16's good cause standard because it was filed after the deadline for amendments contained in the scheduling order. Consequently, Soroof must meet the requirements of both Rule 16(b)(4) and Rule 15(a)(2).

### C. Application of Rule 16

As noted above, the key question under Rule 16's good cause standard is whether Soroof has acted diligently. This, in turn, depends on whether the proposed amendment relies on information that Soroof knew or should have known before the August 31, 2010 deadline for amendments to the pleadings.

The plaintiff asserts that it learned the bulk of the facts it uses to support its alter ego theory of liability against GE during discovery, particularly in the September 2, 2010 deposition of Mr. Scovello. (First Motion to Amend at 8–9; Pl. Memo. at 17). GE Microgen counters that Soroof knew the relevant information prior to the date it filed this lawsuit; indeed, GE Microgen contends that much of it was included in the original complaint. (GE Microgen Opp. at 8–9). First, it points out that the original complaint includes the following allegations: (1) that GE dissolved GEFCS in order to avoid GEFCS' obligations and liabilities; (2) that GE took part in the pre-contract discussions with Soroof; and (3) that GE was involved in negotiations with Soroof to expand Soroof's territory after the Agreement was signed. (GE Microgen Opp. at 8–9; Compl., ¶¶ 6, 9, 19, 27). GE Microgen further asserts that the second amended complaint admits that Soroof knew in May 2000[5] that GE was providing funding to GEFCS. (GE Microgen Opp. at 9; PSAC, ¶ 21).

■ A corporate parent is the alter ego of a subsidiary when it "exercises complete dominion and control over its subsidiary." *Blair v. Infineon Technologies AG*, 720 F.Supp.2d 462, 470 (D.Del.2010) (internal quotation marks omitted). Thus, to proceed on an alter ego theory, a plaintiff must allege facts sufficient to show that " 'the [ ] corporations actually functioned as a single entity and should be treated as such.' " *Id.* (alteration in original) (quoting *Pearson v. Component Technology Corp.*, 247 F.3d 471, 485 (3d Cir.2001)). To determine whether different

**4.** Soroof's focus on the purported agreement of the parties ignores that fact that the court, too, has an interest in ensuring that the parties abide by the deadlines it sets. *See, e.g., Encyclopedia Brown Productions v. Home Box Office, Inc.*, No. 91 Civ. 4092, 1999 WL 126460, at *4 (S.D.N.Y. March 10, 1999) (noting "the interest of the court in maintaining the integrity of its scheduling orders and complying with the admonition of Congress to ensure the efficient completion of pretrial proceedings"); *see also Lincoln v. Potter*, 418 F.Supp.2d 443, 454 (S.D.N.Y.2006) ("Scheduling orders offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed.").

**5.** GE Microgen's Opposition states that the proposed second amended complaint asserts this knowledge came in 2005. However, the proposed complaint actually states that the conversation imparting this fact occurred on May 5, 2000. (PSAC, ¶ 21).

corporate entities actually functioned as one, courts look to factors including "disregarding corporate formalities, siphoning or intermingling of funds, inadequate capitalization, or that the [subsidiary] ... is a mere sham acting for the [parent], among others." *In re Digital Music Antitrust Litigation*, 812 F.Supp.2d 390, 418 (S.D.N.Y.2011); *Blair*, 720 F.Supp.2d at 470–71 (listing the following factors: "(1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of debtor corporations at the time; (5) siphoning of corporate funds by the dominant stockholder; (6) absence of corporate records; (7) whether the corporation is merely a facade").

■ Clearly, each of the facts that GE Microgen highlights is relevant to Soroof's alter ego theory. However, they would not, on their own, support Soroof's alter ego theory as to GE. The facts that GE encouraged an agreement between Soroof and GEFCS, and then provided some funding to GEFCS—the gravamen of the allegations concerning GE in the original complaint—do not establish that GE controlled either GE Microgen or GEFCS. While the allegation that GE directed GEFCS' dissolution is more damning, it still does not show that GE and GEFCS functioned as a single enterprise or that GE and GE Microgen did so. Indeed, GE Microgen and Plug Power clearly agree that Soroof could not make out an alter ego theory on the facts in the original complaint: they argue that Soroof's proposed second amended complaint, which adds facts relevant to the alter ego issue to those in the original complaint, still does not adequately allege an alter ego theory against GE. (Plug Power Opp. at 7; GE Microgen Opp. at 9–10 & n. 3).

The facts that Soroof assertedly learned during discovery are both more varied and more detailed than those included in the original complaint. For example, the proposed second amended complaint alleges that GEFCS and GE Microgen were undercapitalized (PSAC, ¶¶ 12, 64); that GE provided all of the financing and capital for the joint venture (PSAC, ¶¶ 14, 15, 64); that neither

GEFCS nor GE Microgen had any employees, but were staffed with GE personnel (PSAC, ¶¶ 13, 62); and that GE used the $1 million distributor fee to pay salaries of its own employees (PSAC, ¶ 28). These facts, unknown to Soroof prior to the September 2010 Scovello deposition, go to the heart of the corporate relationship among GE, GEFCS, and the defendants. (Plaintiff's Reply Memorandum of Law in Response to GE Microgen's Opposition dated April 16, 2012, at 5–6; Scovello Dep. at 12, 24, 32, 44, 45–46, 48, 49). Because the facts alleged in the original complaint would not make out an alter ego theory against GE, the additional facts included in the proposed second amended complaint are necessary to Soroof's claim. As Soroof did not know and could not reasonably have known this information before the August 31, 2010 deadline for amendments, it has demonstrated good cause for its failure to meet that deadline.

Moreover, Soroof has also acted diligently in moving to amend the complaint to add GE as a defendant. Soroof took Scovello's deposition in September 2010 and filed the First Motion to Amend in October 2010. That motion was effectively held in abeyance during the period that ended with Judge Swain's January 24 Order. Soroof filed this motion less than two months later. Thus, Soroof moved with adequate dispatch in its quest to amend. *See Securities and Exchange Commission v. DCI Telecommunications, Inc.*, 207 F.R.D. 32, 34–35 (S.D.N.Y.2002) (allowing amendment of pleadings four months after plaintiff learned relevant supporting facts).

### D. *Application of Rule 15*

As noted above, leave to amend may be denied when granting leave would be prejudicial or would be futile because the amended complaint would not survive a motion to dismiss. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Ricciuti*, 941 F.2d at 123. In this case, permitting amendment would be neither futile nor prejudicial.

### 1. *Sufficiency of Alter Ego Allegations*[6]

A complaint will overcome a motion to dismiss when it alleges sufficient facts to

---

6. The First Amended Complaint mirrors the pro- posed second amended complaint in all particu-

"suggest" the elements of a claim. *See Starr v. Sony BMG Music Entertainment,* 592 F.3d 314, 321 (2d Cir.2010), *cert. denied,* — U.S. ——, 131 S.Ct. 901, 178 L.Ed.2d 803 (2011) (citing *Bell Atlantic v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *Stoner v. Young Concert Artists, Inc.,* No. 11 Civ. 7279, 2012 WL 512660, at *3 (S.D.N.Y. Feb. 15, 2012). A "formulaic recitation" of these elements is not enough. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Instead, "[w]hat is required are 'enough facts to state a claim to relief that is plausible on its face.'" *Starr,* 592 F.3d at 321 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference" that the accused entity engaged in the alleged conduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).[7]

▮▮▮▮ As Soroof correctly points out, because GE Microgen is a Delaware corporation (FAC, ¶ 5; Defendant GE Microgen, Inc.'s Answer to Plaintiff's First Amended Complaint dated March 8, 2012, ¶ 5), Delaware law governs the question of whether GE Microgen is an alter ego of GE.[8] *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir. 1995).

▮▮▮▮ "Delaware courts take the corporate form ... very seriously" and will disregard it "only in the exceptional case." *Case Financial, Inc. v. Alden,* No. 1184–VCP, 2009 WL 2581873, at *4 (Del.Ch. Aug. 21, 2009) (inter-

nal quotation marks omitted); *see also Sears, Roebuck & Co. v. Sears plc,* 744 F.Supp. 1297, 1305 (D.Del.1990) ("It is only the exceptional case where a court will disregard the corporate form ...."). Therefore, the litigant alleging an alter ego relationship has a heavy burden. *In re Digital Music Antitrust Litigation,* 812 F.Supp.2d at 418 (commenting on both New York and Delaware law).

▮▮▮▮ Again, the key question is whether the corporations functioned as a single entity. *See Blair,* 720 F.Supp.2d at 470. This determination is made by looking at such factors as whether corporate formalities were ignored, funds were siphoned or intermingled, capitalization was inadequate, or the subsidiary was a "mere sham." *In re Digital Music Antitrust Litigation,* 812 F.Supp.2d at 418. As noted above, Soroof has alleged that GE's wholly-owned subsidiary GE Microgen was undercapitalized, as was GEFCS (PSAC, ¶¶ 12, 64); that GE provided all of the financing and capital for the joint venture (PSAC, ¶¶ 14, 15, 64); that neither GEFCS nor GE Microgen had any employees, but were staffed with GE personnel (PSAC, ¶¶ 13, 62); and that GE used the $1 million distributor fee to pay salaries of its own employees (PSAC, ¶ 28). It further alleges that GE leased space identified as belonging to GE Microgen, which actually housed GEFCS (PSAC, ¶ 63); that GE had a presence on the boards of directors of both GE Microgen and Plug Power, as well as on the management

---

lars except the allegations that focus on GE's putative alter ego relationship with GE Microgen and/or GEFCS. GE Microgen has "specifically reserve[d] its right ... to seek dismissal" of the operative complaint in this case based on Soroof's asserted failure to state a claim. (GE Microgen Opp. at 17 & n. 6). For the purposes of this motion, then, I will focus on the facts Soroof adds to the first amended complaint, which are relevant to the alter ego issue. This will allow the defendants to file a fully briefed motion to dismiss if and when it becomes appropriate.

7. In its Reply to Plug Power's opposition, Soroof asserts that " 'futility' justifies denying a motion to amend 'only where it is "beyond doubt that the plaintiff can prove no set of facts in support" of his amended claims.'" (Plaintiff's Reply Memorandum of Law in Response to Plug Pow-

er's Opposition dated April 16, 2012 ("Reply to Plug Power") at 2 (quoting *Pangburn v. Culbertson,* 200 F.3d 65, 70–71 (2d Cir.1999))). That standard hales from *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), which was abrogated by *Twombly. See Twombly,* 550 U.S. at 560–63, 127 S.Ct. 1955. The standard of *Twombly* and *Iqbal* now controls the pleading requirements of a complaint.

8. Courts in this district have observed that the law of Delaware on this subject is substantially similar to the law of New York. *Sykes v. Mel Harris & Associates,* 757 F.Supp.2d 413, 430 (S.D.N.Y.2010); *R.F.M.A.S. v. Mimi So,* 619 F.Supp.2d 39, 67–68 (S.D.N.Y.2009); *Wausau Business Insurance Co. v. Turner Construction Co.,* 141 F.Supp.2d 412, 417 (S.D.N.Y.2001). Therefore, New York law can be considered as a supplement to the law of Delaware.

committee of GEFCS (PSAC ¶ 65); and that GE, through GE Microgen and Plug Power, directed the dissolution of GEFCS (PSAC ¶ 63). These allegations are sufficient to allow the Court to draw the reasonable inference that GE dominated and controlled GE Microgen and, consequently, GEFCS.[9] *See Blair,* 720 F.Supp.2d at 470; *see also id.* at 472 (holding that an alter ego relationship had been pled by allegations of undercapitalization, insolvency, siphoning, and failure to observe corporate formalities); *Harco National Insurance Co. v. Green Farms,* CIV. A. No. 1131, 1989 WL 110537, at *6 (Del.Ch. Sept. 19, 1989) (stating allegations of lack: of corporate formalities, commingling of assets between shareholders and corporation, and undercapitalization "present a good case for piercing the corporate veil"). Indeed, the allegations presented here are similar in breadth and nature to the facts Soroof successfully used to argue that GEFCS was an alter ego of GE Microgen and Plug Power.[10] (Jan. 24 Order at 27–28).

However, Delaware law also "require[s] an element of fraudulent intent in its alter ego test." *Blair,* 720 F.Supp.2d at 470; *see also NetJets Aviation, Inc. v. LHC Communications, LLC,* 537 F.3d 168, 177 (2d Cir.2008) (applying Delaware law and noting that, to show alter ego liability, "the plaintiff need not prove that the corporation was created with fraud or unfairness in mind. It is sufficient to prove that it was so used."). Courts and commentators have noted that this standard is "less than clear" and has been " 'criticized for its ambiguity and randomness.' " *PSG Poker, LLC v. DeRosa–Grund,* No. 06 Civ. 1104, 2008 WL 190055, at *11 & n. 21 (S.D.N.Y. Jan. 22, 2008) (quoting *Allied Capital Corp. v. GC–Sun Holdings, L.P.,* 910

A.2d 1020, 1042 (Del.Ch.2006)). Notwithstanding this imprecision, the cases indicate that, to meet the standard, fraud or inequity "must be found in the defendants' use of the corporate form." *Trevino v. Merscorp, Inc.,* 583 F.Supp.2d 521, 530 (D.Del.2008) (internal quotation marks omitted); *Mobil Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 269 (D.Del.1989) (same). The wrong alleged in the underlying cause of action, "by itself, does not supply the necessary fraud or injustice." *Trevino,* 583 F.Supp.2d at 531 (internal quotation marks omitted); *Mobil Oil,* 718 F.Supp. at 268 ("Any breach of contract and any tort ... is, in some sense, an injustice. Obviously this type of 'injustice' is not what is contemplated by the common law rule that piercing the corporate veil is appropriate only upon a showing of fraud or something like fraud."); *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.,* No. 3184–VCP, 2008 WL 4057745, at *12 (Del.Ch. Sept. 2, 2008) ("[T]he requisite element of fraud under the alter ego theory must come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim."). Although elements of the underlying claim will not suffice, the same facts used to show that the business entities operated as a single enterprise can lend the requisite fraud or inequality. *NetJets Aviation,* 537 F.3d at 183; *PSG Poker,* 2008 WL 190055, at *11 & n. 22. Finally, although "[l]imiting ... liability is a traditional reason for a corporation," if that limitation is "done deliberately, with specific intent to escape liability for a specific tort or class of torts," it can merit disregarding the corporate form. *Zubik v. Zubik,* 384 F.2d 267, 273 (3d Cir.1967).

Soroof asserts that the following facts exhibit GE's misuse of the corporate form to

**9.** Inexplicably, Plug Power argues that Soroof must allege facts sufficient to show that GE controlled "three legally distinct entities"—GE Microgen, Plug Power, and GEFCS. (Plug Power Opp. at 3, 4 n. 2). However, Soroof's motion seeks primarily to show that GE controlled GE Microgen. (Reply to Plug Power at 3–4). As Plug Power correctly points out, it is necessary to pierce the corporate veil at each "level or layer" of ownership. (Plug Power Opp. at 4 n. 2 (citing *In re Heritage Organization, L.L.C.,* 413 B.R. 438, 514 (Bankr.N.D.Tex.2009)).) By alleging that GE Microgen was an alter ego of GE, Soroof will have done so, showing the GE controlled GE

Microgen which, along with Plug Power, controlled GEFCS.

**10.** *Of course,* Judge Swain granted summary judgment in favor of Soroof on its claim that GEFCS was an alter ego of GE Microgen and Plug Power. (Jan. 24 Order at 28). My holding here is more modest, merely deciding that Soroof has alleged facts that, if true, show that the operations of GE and GE Microgen were sufficiently intermingled to support a finding that they were alter egos.

work a fraud or injustice: (1) GE siphoned off the distributor fee from GEFCS and is now using "the corporate form to benefit financially" while hid[ing] behind the very form it . . . disregarded in order to avoid any legal or financial obligation" (Reply to Plug Power at 7); (2) GE used "its subsidiary entities to make promises that they could not meet, reaping the financial windfall from those promises and leaving GE Microgen and [GEFCS] in an undercapitalized state such that they would never be able to honor any legal obligation" (Reply to Plug Power at 8); and GE consistently misrepresented "that it had abandoned development" of the fuel cell and then dissolved GEFCS even while it knew of possible legal claims against it from Soroof (Reply to Plug Power at 9).

These allegations provide the requisite element of fraud or inequity. Particularly, GE's alleged siphoning of funds from GEFCS "indicates not only that [GEFCS and GE were] operating as a unified economic entity, but also that the corporate form ha[d] been erected for a fraudulent purpose—*i.e.*, to solicit funds . . . on behalf of [GEFCS] when, in fact, such funds [were] to be used for [GE's] . . . benefit." *PSG Poker*, 2008 WL 190055, at *11 n. 22; *see also Blair*, 720 F.Supp.2d at 473 (finding the requisite fraud or injustice where defendants "misdirected funds, exercised crippling control, and purposely siphoned profits" from subsidiary). Moreover, Soroof alleges that GE caused the dissolution of GEFCS even though it knew of Soroof's potential claims. As noted in the January 24 Order, once GEFCS was dissolved and its valid certificate of cancellation filed, it could not be sued. (Jan. 24 Order at 25); *see, e.g., Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.*, 854 A.2d 121, 138–39 (Del.Ch.2004). GE's actions indicate that it used the GEFCS' business form to avoid liability for such claims.

### 2. *Prejudice*

■ As stated above, prejudice arises when the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir.1993). The defendants bear the burden of establishing prejudice.[11] *Id.; see also Saxon v. Lempke*, No. 09 Civ. 1057, 2010 WL 4608613, at *2 (S.D.N.Y. Nov. 12, 2010).

■ GE Microgen asserts that Soroof has taken too long to seek leave to amend. I have already rejected the argument that the plaintiff was not diligent in moving to amend the complaint, finding that Soroof did not know the relevant allegations included in the proposed second amended complaint until after the deadline for amendments of pleadings, and that any subsequent delay was reasonable. To the extent that GE Microgen argues that delay should preclude amendment under Rule 15, it fails to meet its burden.

"[M]ere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend." *Park B. Smith Inc. v. CHF Industries Inc.*, 811 F.Supp.2d 766, 779 (S.D.N.Y.2011). Of course, "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *First Blood Associates*, 988 F.2d at 350. Here, there has been a delay of approximately one year and seven months from the deadline for amendment until the filing of this motion. However, it cannot be said that this delay is "unexplained." As discussed above, once Soroof learned facts regarding GE's relationship with GE Microgen and GEFCS, it promptly moved to amend its complaint. The December 1 Order then held the motion to amend in abeyance until Judge Swain resolved the parties' various motions. Soroof renewed its application to amend within two months of Judge Swain's January 24 Order. Thus, the delay attributable to Soroof is reasonable.

GE Microgen claims that, if leave to amend is granted, the defendants will be prejudiced because of the (1) additional delay in the pleading process, (2) new issues and

---

**11.** Plug Power does not address the question of prejudice in its opposition. Therefore, this section focuses exclusively on GE Microgen's arguments.

discovery related to the alter ego claims, (3) duplication of discovery regarding the dissolution of GEFCS, (4) additional motion practice, and (5) revisitation of previously-resolved matters. (GE Microgen Opp. at 12).

GE Microgen fails to detail its claims of prejudice. For example, it does not frame the purported "new issues" that will be raised by this alter ego claim, identify why discovery on GEFCS' dissolution will be "duplicate[d]," or outline which previously-resolved matters will have to be "revisit[ed]." (GE Microgen Opp. at 12). Moreover, it ignores the fact that discovery is ongoing and does not close until November 30, 2012. (Endorsed Order dated March 14, 2012). Additionally, any new discovery is not likely to be burdensome, as no new theory of recovery is added-instead, the operative facts at the foundation of the case remain the same. *See Bridgeport Music, Inc. v. Universal Music Group Inc.*, 248 F.R.D. 408, 415 (S.D.N.Y. 2008) (allowing joinder of additional party where "the claims against [it] are virtually identical to those against the other defendants"). To the extent that GE Microgen complains about added time and cost, "[a]llegations that an amendment will require the expenditure of some additional time, effort, or money do not constitute undue prejudice." *Id.* (alteration in original) (internal quotation marks omitted).

GE Microgen further asserts that the proposed amendment would prejudice the defendants because it "attempts to circumvent" the January 24 Order, which allowed Soroof to replead its breach of contract and misrepresentation causes of action. (GE Microgen Opp. at 17). This claim of prejudice is perplexing. GE Microgen identifies four statements that allegedly evidence the proposed second amended complaint's disregard for the January 24 Order. (GE Microgen Opp. at 15, 17; PSAC ¶¶ 23, 43, 47, 51). However, each of the designated statements also appears, *verbatim*, in the currently operative First Amended Complaint (FAC, ¶¶ 21, 41, 45, 49) and will therefore have to be addressed no matter what the outcome of this motion to amend. GE Microgen's concerns can be addressed in its anticipated motion to dismiss the operative complaint-a motion that

will likely be filed whether this motion to amend is granted or denied. (GE Microgen Opp. at 17 & n. 6).

In short, the defendants have failed to meet their burden of showing that granting leave to amend the complaint will result in undue prejudice.

*Conclusion*

For the foregoing reasons, Soroof Trading Development Company, Ltd.'s Motion for Leave to File Amended Complaint (Docket No. 123) is granted.

SO ORDERED.